916 P.2d 224

In the Matter of Gerald R. BLOOM-FIELD, Esq., an Attorney Licensed to Practice Law Before the Courts of the State of New Mexico.

No. 18090.

Supreme Court of New Mexico.

May 6, 1996.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Board.

James I. Bartholomew, Albuquerque, for Respondent.

## OPINION

PER CURIAM.

This matter came before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 to –316 (Repl. Pamp.1995), wherein attorney Gerald R. Bloomfield, in accordance with an agreement for discipline by consent, admitted to having committed numerous acts of neglect and other misconduct in violation of the Rules of Professional Conduct, SCRA 1986, 16–101 to –805 (Repl.Pamp.1995), and agreed to accept a period of suspension and probation. We adopt the disciplinary board's recommendation and approve the consent to discipline.

In June 1988, Edward Herrera suffered a stroke and was taken by his sister to Presbyterian Hospital, as she and Herrera were of the belief that he was still covered by an insurance policy held by his former employer. After spending five days in intensive care, Herrera learned that his insurance had been cancelled. He was moved to the VA Hospital but not before becoming indebted to Presbyterian for nearly $10,000.

Herrera retained an attorney to sue his former employer, and litigation was commenced in April 1989. In February 1990, however, the attorney advised Herrera that he was withdrawing from the case and suggested that Herrera seek new counsel. On October 24, 1991, the case was dismissed for failure to prosecute. On November 14, 1991, the court permitted the first attorney to withdraw and permitted respondent to be substituted as counsel for Herrera.

Respondent took no action to have Herrera's case reinstated, and the dismissal became final. In April 1993, however, he filed a new lawsuit on behalf of Herrera alleging essentially the same claims that had been contained in the first lawsuit. Defendants moved to dismiss on several grounds, including a claim that the action was barred by the

statute of limitations. After a hearing, the court dismissed some of the causes of action but allowed respondent the opportunity to amend the complaint; no amended complaint was ever filed.

In July 1994, defendants filed a second motion to dismiss requesting that the remaining causes of action be dismissed as barred by the statute of limitations. Respondent filed no response to this motion. A third motion to dismiss was filed in August 1994 alleging that despite numerous efforts by defense counsel to contact respondent regarding the pre-trial order, phone calls to him were never returned. Respondent filed no response to this motion and, on August 12, 1994, Herrera's case was dismissed with prejudice.

In responding to Herrera's complaint, respondent advised disciplinary counsel that he knew all along that the case could not be won but was trying to "keep it alive" in hopes of negotiating a settlement, thoughts he neglected to share with Herrera.

In addition to violating duties to his client set forth in Rules 16–101, 16–103, and 16–104(A), respondent violated several of the duties owed by an attorney to the legal system. Rule 16–302 requires an attorney to make reasonable efforts to expedite litigation; failing to respond to motions and refusing to deal with opposing counsel constitute violations of this rule. Rule 16–301 forbids an attorney from advancing a claim "unless there is a basis for doing so that is not frivolous." There is no exception to this rule for occasions when an attorney might wish to pursue an invalid claim simply to see whether the opposing party might offer something by way of settlement; in fact, it is precisely this situation which the rule seeks to preclude. Our system of justice was not designed as a mechanism which one may utilize to extort money or other consideration from another in exchange for dropping a claim which one knows is specious. Respondent's tactics in pursuing a baseless claim and then ignoring efforts to dispose of the claim amounted to conduct prejudicial to the administration of justice in violation of Rule 16–804(D).

In February 1993, Jeffrey Palm hired respondent to assist him with an employment claim and paid him $500. In March 1993, respondent wrote a one-page demand letter to the employer. Thereafter, no discernible action was taken by respondent. Despite frequent calls and several visits to respondent's office, Palm was unable to obtain information about the status of his case.

In February 1995, Palm requested attorney Jeffrey L. Baker to intervene on his behalf. Baker wrote several letters to respondent, none of which elicited a response. Finally, in desperation, Palm wrote respondent asking for the return of his file; respondent ignored this request as well. He also disregarded several inquiries from disciplinary counsel.

By his conduct with respect to Jeffrey Palm, respondent violated Rules 16–101, 16–103, 16–104(A), 16–105(A), 16–116(D), 16–803(D), and 16–804(D).

In May 1994, Randall Sisk retained respondent to assist him with a dispute he was having with his former wife regarding the amount of child support he should be paying. Although recently unemployed, Sisk paid respondent $700 and reshingled respondent's residence to pay for his services.

Respondent filed a motion to reduce or abate child support, and the matter was set for hearing before a special master. Respondent appeared at the hearing and, although he had conducted no discovery regarding the financial resources of Sisk's ex-wife and had prepared no worksheet regarding the parents' relative incomes and support responsibilities, agreed to a stipulated settlement defining his client's responsibility for on-going support and the payment of arrearages. Thereafter, he failed to prepare the stipulated agreement as promised necessitating the filing of an emergency motion to enforce child support by opposing counsel. At a hearing on this motion, not only did the special master increase Sisk's support obligation and assess arrearages but also assessed Sisk the amount of his ex-wife's attorney fees.

In this instance respondent committed violations of Rules 16–101, 16–103, 16–105(A), and 16–804(D).

In June 1994, respondent was retained by Peggy Brady to defend her against a claim arising out of an automobile accident. Although respondent wrote a letter on Brady's behalf to the person who was threatening to sue and offered to negotiate a settlement, his efforts met with no success. Brady was served with a complaint and summons advising her that an answer would need to be filed by July 22, 1994.

Brady was in the process of moving out of state and took the papers to respondent with the specific request that he take whatever steps were necessary to prevent the entry of a judgment, as she was concerned about possible damage to her credit rating. If necessary, she would simply pay plaintiff the amount requested in the lawsuit in order to preclude a judgment. Respondent asked for and was paid $300 and told Brady that he would handle the matter. Brady relocated to Connecticut based upon respondent's advice that she could go ahead with her move.

On August 11, 1994, Brady received word that a default judgment had been entered against her in Bernalillo County Metropolitan Court. She called the clerk and learned that the judgment had been entered on August 1st because no answer had been filed on her behalf. She immediately called respondent, who told her that the clerk was mistaken and that he had filed an answer. He promised to call the court and set the matter straight and said he would get back to her right away. Brady heard nothing further from him that day or the next.

The following Monday, Brady again called the court clerk and was told that as of the previous Friday (August 12) nothing had been filed on her behalf. Brady called respondent, who first said that he had filed something "within the last few days" and then, when told of Brady's discussion with the clerk, claimed that a pleading was being filed "this very moment." The answer was ultimately filed at 4:50 P.M. on August 15. The default was ultimately set aside and the matter settled.

With respect to Brady, respondent committed violations of Rules 16–103, 16–104(A), and 16–804(D) by his lack of diligence and his failure to keep his client advised as to the status of her case. By lying to Brady about steps he had allegedly taken, he engaged in conduct involving deceit and misrepresentation in violation of Rule 16–804(C) and conduct adversely reflecting on his fitness to practice law in violation of Rule 16–804(H).

We note from the record of this case that this is not the first time respondent has been before the disciplinary board. In 1988, he received a formal reprimanded pursuant to Rule 17–206(A)(5) and was placed on probation for his neglect of a client's case and his failure to cooperate with disciplinary counsel and other disciplinary authorities. His probation has been extended (by mutual consent) on no fewer than three (3) occasions because of additional ethical lapses, and he remains on probation to this day.

Despite the best efforts of the disciplinary board to assist respondent with his personal and managerial problems, however, he continues to have difficulty meeting deadlines and communicating with clients; accordingly, we see no alternative to the recommended period of suspension. While this Court will take whatever steps are necessary to support an attorney who needs guidance in managing his or her practice, the attorney must follow the advice given to him or her and begin to demonstrate some indication that the confidence of others in his or her underlying ability to function as an attorney has not been misplaced. We cannot and will not continue to request other attorneys to devote endless amounts of time to supervise an attorney who refuses to grasp even the most rudimentary concepts of case management and client relations. Hopefully a period of suspension will convince respondent that unless he begins to take his obligations to courts and clients more seriously, his career as an attorney could easily come to an end.

IT IS THEREFORE ORDERED that Gerald R. Bloomfield be, and hereby is, suspended indefinitely from the practice of law for a minimum of three (3) years pursuant to Rule 17–206(A)(3) effective March 25, 1996.

IT IS FURTHER ORDERED that pursuant to Rule 17–206(B), the imposition of all but nine (9) months of actual suspension will be deferred and that respondent will automatically be reinstated to practice on a probationary basis after nine (9) months, provided that he has done the following:

(1) Refunded monies paid to him by the following clients in the following amounts:

| Edward Herrera | $ 124.46 |
| Jeffrey Palm | 500.00 |
| Randall Sisk | 2000.00 |
| Peggy Brady | 300.00 |

(2) Agreed to go before the Fee Arbitration Panel of the State Bar of New Mexico with respect to the fee paid to him in goods by client Michael Aragon and refunded to Mr. Aragon any amount determined by the panel to be owed by him to Mr. Aragon;

(3) Returned to Jeffrey Palm his file by 5:00 p.m. on or before Friday, January 5, 1996;

(4) Obtained employment where he will be under the constant supervision of an attorney approved by disciplinary counsel or, if this is not feasible, retained at his own expense the services of a law office management consultant to organize his solo practice; and

(5) Reimbursed the disciplinary board its costs in bringing these proceedings in the amount of $312.59 on or before May 1, 1996.

IT IS FURTHER ORDERED that proof of compliance with these preconditions to reinstatement will be provided by respondent to disciplinary counsel at least three (3) weeks prior to the date of his scheduled probationary reinstatement, or said reinstatement will be delayed until three (3) weeks after the receipt by disciplinary counsel of said proof of compliance.

IT IS FURTHER ORDERED that upon reinstatement, respondent shall be placed on probation for a period of two (2) years and three (3) months on the following terms and conditions:

(1) He shall meet with a supervisor (to be appointed by the Supreme Court at the time of his probationary reinstatement) on a bi-weekly basis to review his cases and will accept no new case without his supervisor's authorization;

(2) He shall comply promptly with all directives of his supervisor concerning diligence and client communication;

(3) He shall advise all clients of his probationary status in writing at the time he is retained and provide each with the name and telephone number of his supervisor and shall prominently post in his office a notice of his probationary status, which shall include the address and telephone number of the office of disciplinary counsel;

(4) He shall promptly provide his clients with copies of all correspondence and pleadings relating to the subject of the representation, except to the extent such information may be withheld under the limited circumstances described in the comment to Rule 16–104 for withholding information;

(5) He shall promptly and timely, without extensions, respond to any and all complaints filed with the disciplinary board after the date hereof, along with any requests from disciplinary counsel for additional information relating to such complaints;

(6) He shall continue to abstain from using alcohol;

(7) He shall continue to attend therapy as recommended and approved by Dr. William Foote and agrees that his therapist shall report said regular attendance and/or any missed appointments to the office of disciplinary counsel on a monthly basis;

(8) He shall take and receive a passing grade on the Multistate Professional Responsibility Examination within twelve (12) months of probationary reinstatement;

(9) He shall commit no violations of the Rules of Professional Conduct; and

(10) He shall make an effort to obtain legal malpractice insurance and provide a certificate of insurance to disciplinary counsel. If he is not able to obtain legal malpractice insurance, he shall report his efforts and the reasons for his inability to obtain said insurance to disciplinary counsel in writing.

Should any of these terms and conditions be violated, said violations will be brought to the attention of this Court pursuant to Rule 17–206(G). If found to be in contempt of this order, respondent may be fined, censured, suspended, or disbarred. Full reinstatement to practice will not be automatic but will occur only after proceedings held pursuant to Rule 17–214(H).

IT IS FURTHER ORDERED that respondent shall comply with all of the requirements of Rule 17–212 within ten (10) days of the effective date of this order.

IT IS FURTHER ORDERED that this opinion be published in the State Bar of New Mexico *Bar Bulletin* and the *New Mexico Reports.*

IT IS SO ORDERED.