2006-NMSC-047

143 P.3d 731

**In the Matter of Michele ESTRADA, Esq.,**

**An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

**No. 28,406.**

Supreme Court of New Mexico.

Sept. 28, 2006.

Joel L. Widman, Deputy Disciplinary Counsel, Albuquerque, NM, for Petitioner.

Douglas Foster, Esq., Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This disciplinary proceeding arises from a discovery dispute and the introduction of forged evidence. It offers us the opportunity to discuss professional and ethical issues that may occur when New Mexico attorneys must confer with out-of-state counsel for corporate clients involved in litigation in New Mexico. In such situations, attorneys licensed to practice in New Mexico have an independent duty to the New Mexico judiciary to obey New Mexico's ethical and discovery rules, regardless of the opinion of out-of-state counsel. We agree with the hearing committee that attorney Michele Estrada (Respondent) violated the Rules of Professional Conduct in this case, and because of the serious nature of the violations, we impose on Respondent one year's suspension from the practice of law. Because of mitigating circumstances, we defer that suspension on the condition that Respondent satisfactorily completes a one-year period of probation, during which time Respondent is ordered to be supervised for the probationary year by an attorney to be approved of by this Court. Respondent is responsible for the costs of these proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Formal disciplinary proceedings were initiated against Respondent based on her conduct during the defense of a personal injury action for damages, allegedly resulting from a pharmacist filling a child's prescription for Ritalin with methadone. The case resulted in a mistrial after it became apparent that a prescription introduced into evidence, to show that the pharmacy could account for all its dispensed methadone, was a forgery. The disciplinary charges alleged, among other things, that during the course of the litigation Respondent violated the rules of discovery and failed to verify the authenticity of the forged prescription before introducing it into evidence, thus violating the Rules of Professional Conduct.

{3} The chair of the Disciplinary Board appointed a hearing committee, pursuant to Rule 17–309(C) NMRA, to hold an evidentiary hearing and issue findings of fact, conclusions of law, and a recommendation for discipline. The hearing committee found that despite having prior knowledge that the records showed a discrepancy between the number of methadone tablets prescribed and those dispensed, Respondent denied a request for admission asking her client to admit that inventory records of methadone in the possession of the pharmacy indicated that on October 10, 2001, at least sixty methadone tablets were missing. The committee further found that Respondent failed to amend her response to the request after she received confirming evidence of her client's liability. The committee also found that Respondent failed to supplement answers to a request for production requesting copies of all the pharmacy's records of loss or theft required by the New Mexico Board of Pharmacy. Finally, the committee found that Respondent failed to verify the authenticity of the forged prescription that she offered into evidence.

{4} Based on these findings, the committee drew the following conclusions: Respondent failed to provide her client with competent representation, violating Rule 16–101 NMRA; Respondent misled the court, violating Rule 16–102(D) NMRA; Respondent failed to properly respond to discovery requests, violating Rule 16–304(A) NMRA and Rule 16–304(D); Respondent engaged in or assisted in a fraudulent course of conduct, which misled the court, which was dishonest and deceitful, and which was prejudicial to the administration of justice, violating Rule 16–804(C) NMRA and Rule 16–804(D); and had engaged in conduct that adversely reflected on her fitness to practice law, violating Rule 16–804(H). The hearing committee also found as mitigating factors that Respondent was a relatively inexperienced attorney in her firm, Respondent was consistently and forcefully instructed by out-of-state counsel that allegedly missing prescriptions would be

found, and that Respondent relied to a significant extent on information provided by the pharmacist—who was not entirely candid and who was communicating with out-of-state counsel and other pharmacy personnel about the litigation—in defending the lawsuit. As aggravating factors, the committee found that Respondent did not accept responsibility for the gravity of her conduct and that her reliance on the advice, direction, and influence of non-admitted counsel and other pharmacy personnel did not absolve her from responsibility to exercise independent judgment.

{5} The decision of the committee was subsequently reviewed by a hearing panel, composed of three members of the Disciplinary Board, pursuant to Rule 17–314(A) NMRA. In a brief order and decision, the panel accepted and adopted the hearing committee's findings of fact except those that found Respondent had violated the Rules of Professional Conduct, and then rejected the committee's conclusions of law. The panel also accepted the aggravating and mitigating factors, but refused to accept the committee's recommendation for discipline, and dismissed the complaint.

{6} Disciplinary counsel petitioned this Court to review the panel's decision. We remanded for the hearing panel to clarify its split decision and its reasons for not accepting the committee's conclusions of law and dismissing the complaints while accepting and adopting the hearing committee's findings of fact. In response, the panel issued an order stating that its decision was based on its belief in Respondent's explanation that she denied the existence of pharmacy records of missing methadone because her client continually assured her that the pill count discrepancy could be explained. The panel also stated that it believed Respondent's explanation that she did not produce the form filed with the New Mexico Board of Pharmacy because (1) she had not seen it, and (2) even though it reported a mis-filled prescription, she did not believe it reported lost or stolen drugs. The panel also stated that even though these responses may not have been "hyper-technically correct," it "did not believe or accept that the discovery responses

were intended to deceive opposing counsel or the court by commission or omission." The panel then stated that it rejected several of the hearing committee's findings addressing the discovery violations and Respondent's failure to verify the authenticity of the forged prescription. Accordingly, the panel wrote, it did not agree with the committee's conclusions that Respondent had violated any of the Rules of Professional Conduct.

## DISCUSSION

 {7} As this Court recently clarified in *In re Bristol*, 2006–NMSC–041, ¶ 15, 140 N.M. 317, 142 P.3d 905 "the hearing committee is the only entity designated to take evidence during the course of a formal disciplinary proceeding." And, as we emphasized in that case, "[b]ecause the hearing committee *directly observes witness testimony, it is in the best position to weigh the evidence, resolve matters of credibility, and choose between the conflicting inferences that may be drawn from the evidence." *Id.* In conducting its review of the committee's findings, therefore, "the hearing panel should defer to the hearing committee on matters of weight and credibility, viewing the evidence in the light most favorable to the hearing committee's decision and resolving all conflicts and reasonable inferences in favor of the decision reached by the hearing committee." *Id.* ¶ 16. As we pointed out, even though the panel is authorized by Rule 17–315 NMRA to make additional findings, "additional findings should be limited to factual issues not considered by the hearing committee or to situations where the hearing committee's findings are not supported by substantial evidence." *In re Bristol*, 2006–NMSC–041, ¶ 17, 142 P.3d 905. By contrast, the panel reviews the committee's legal conclusions *de novo,* while giving " 'respectful consideration' " to the hearing committee's decision but remains free to draw its own legal conclusions and to make independent recommendations for discipline. *Id.* ¶ 18. This Court employs the same standard of review as that used by the hearing panel. *Id.* ¶ 26.

## FINDINGS OF FACT

 {8} In its original order, the panel wrote that it accepted all findings of fact

made by the committee, except those that concluded Respondent violated the Rules of Professional Conduct. The panel then rejected all the committee's conclusions of law. We remanded for clarification of the split decision, and in its order filed in response, the panel stated that it had not accepted all the committee's findings and had rejected all those, which it enumerated, that did not support its conclusion that Respondent had violated none of the Rules of Professional Conduct. Insofar as several of these findings draw conclusions about whether Respondent violated the Rules of Professional Conduct, we will address whether those conclusions were supported by the findings later in this opinion, and review those issues *de novo*. In reviewing the panel's rejection of factual findings of the committee, however, we look to see whether it erroneously rejected findings that were supported by substantial evidence. We address each area of rejected findings in turn.

### Findings Addressing Discovery of Inventory Reports Indicating Missing Drugs

{9} This group of rejected findings is extensive, and address Respondent's denial that inventory records of methadone supplies in the possession of the pharmacy on October 10, 2001, indicated that at least sixty methadone tablets were missing. The committee found that Respondent received the request for admission on approximately February 19, 2002, and denied it on March 7, 2002. After Respondent received the request, she made two trips to the pharmacy: first, on February 28, 2002, and, second, March 21, 2002. Respondent testified that she only became aware of the discrepancy on her second visit because she did not conduct a thorough examination of prescription records on her first visit.

{10} The hearing committee found, however, that Respondent gained enough knowledge on her first visit, before she responded to the discovery request, to put her on notice that her client was potentially liable for misfilling a prescription. The committee based this finding on a letter Respondent wrote to her client on August 2, 2003, in which she stated that on her first visit, Respondent and the pharmacist did an inventory and found sixty missing methadone tablets. Corroborating this evidence was the pharmacist's testimony that he believed the inventory was first conducted in late February. The committee also found that Respondent's time records reported that on February 28, 2002, she traveled to the pharmacy to review documents in response to the plaintiff's request for production. And additional time records, submitted on March 14, 2002 and March 15, 2002, before Respondent's second visit to the pharmacy, reported a conference with out-of-state counsel for the pharmacy to review store records to "rectify" the discrepancies in the methadone and Ritalin numbers.

{11} The committee also found that other evidence did not contradict its finding that Respondent knew of the discrepancy in February. In her letter to her client on March 26, 2002, in which Respondent recommended admitting liability, she explained that her audit revealed a surplus of sixty tablets of Ritalin and a shortage of sixty tablets of methadone. Although she stated that she had visited the pharmacy on March 21, 2002, she did not specifically state that the discrepancy was discovered on that day. And in her June 3, 2002 report, Respondent indicated that the pharmacist performed an inventory after service of the complaint. The committee's findings show that the complaint was filed on January 9, 2002, and Respondent drafted an answer to the complaint on February 4, 2002. These documents, therefore, did not supply convincing proof to the committee that the discrepancy was not discovered until March.

{12} Respondent testified she denied reports that the discrepancy existed because she was assured by the pharmacy no discrepancy existed. But the committee's findings indicate that, unlike the hearing panel, it simply did not believe Respondent's explanation for her failure to admit that the pharmacy's records showed a discrepancy. Based on its finding that Respondent had discovered the discrepancy in February after conducting an inventory with the pharmacist, the committee found Respondent's credibility questionable when she asserted that the pharmacist claimed from February onwards

that no shortage of methadone existed. Indeed, Respondent's own litigation report undercut the reasonableness of her claim that the pharmacist believed early on that the pill count would balance. In that litigation report, dated June 3, 2002, Respondent wrote: "The pharmacist is devastated about the mistake. He is a very honest person, and in conversations with him, he is forthcoming to a fault. It will be difficult to rein him in." That same report also acknowledged: "It appears fairly certain that the pharmacist did dispense the wrong medication." These statements in the report describing the pharmacist's state of mind appear at odds with Respondent's testimony to the committee that when she was writing the litigation report, the pharmacist tried to prove to her that "the pill count balanced." Thus, they support the inference drawn by the committee that Respondent believed the records showed there was a discrepancy between the methadone prescribed and the methadone dispensed.

 {13} In reviewing a substantial evidence claim, the reviewing body does not look to see whether substantial evidence exists to support the opposite result, but whether such evidence supports the result reached. *In re Bristol*, 2006–NMSC–041, ¶ 16, 142 P.3d 905. It is not for the hearing panel or this Court to reweigh the evidence or substitute our judgment for that of the fact finder. *Id.* ¶¶ 19, 26. In our view, there was sufficient evidence to support the findings of the committee that Respondent had sufficient knowledge of the existence of a discrepancy in February 2002, before she responded to the request for admission, "to have placed her on notice that she could not simply 'DENY' Request for Admission No. 9 on March 7, 2002, without further investigation." And, as the committee further found, nothing in the subsequent review of the records on March 21, 2002, "changed the need to accurately respond to Request for Admission No. 9, because what followed was counsel's recommendation that liability ought to be conceded as reported in the March 26, 2002 letter." Because there was sufficient evidence to support the committee's findings on whether Respondent knew of the discrepancy in the pill count when she responded to

the request for admission, the hearing panel erred when it rejected them.

**Findings Addressing Discovery of Records of Lost or Stolen Drugs Required by the New Mexico Board of Pharmacy**

 {14} This group of findings addresses the request that Respondent produce photocopies of all pharmacy records of loss or theft of a controlled substance required by the New Mexico Board of Pharmacy. On March 15, 2002, Respondent answered that none existed. Although the committee found that at that time the response was accurate, Respondent had a duty to supplement her responses, pursuant to Rule 1–026(E)(2)(b) NMRA, if she subsequently obtained information that would be responsive to the request. And the committee found that at some time before April 3, 2002, Respondent told the regional manager of the pharmacy that she should file a report with the New Mexico Board of Pharmacy disclosing the litigation and the potential prescription misfill. On April 3, 2002, the manager filed a "Significant Adverse Drug Event Reporting Form" with the pharmacy board, stating that the pharmacist had mis-filled a prescription. Respondent testified at trial that she was not aware the manager had filed this form. However, a letter to her client stated that after her first trip to the pharmacy in February, and her discovery that sixty methadone tablets were missing, she notified the manager that she should file a form with the New Mexico Board of Pharmacy to comply with regulations and that the manager had later informed her that she had done so.

{15} The panel accepted these findings, but its order after remand stated that it rejected the committee's findings drawing the following inferences: (1) Respondent's testimony—that she had asked the manager to file a different form with the federal government and not the state pharmacy board—was contrary to the evidence; and (2) Respondent's testimony was not credible because the manager confirmed that the subject of their discussion was the New Mexico Board of Pharmacy form and that she had told Respondent that she had filed the pharmacy board form. The panel also rejected

the committee's findings that Respondent's version of the facts was not supported by the evidence, that Respondent either failed to request a copy of the form from the manager to reply to discovery or simply refused to supplement the discovery request, and failed to disclose the existence of or produce the "Significant Adverse Drug Event Report Form." Acknowledging that the testimony was conflicted, the panel then determined that Respondent provided the more credible version of the facts.

{16} Again, the panel erred in rejecting the committee's findings, which were supported by substantial evidence in the record. There was conflicting evidence concerning which form Respondent told the manager to complete and whether it was a federal form or a form to be sent to the state pharmacy board. The manager testified that she filed the report after Respondent told her that "it looked like an error had been made, that we were short and that we needed to report it to the Board of Pharmacy." The manager also testified that she spoke later with Respondent, who asked if she had filed the report, and the manager told her she had done so. In addition, Respondent acknowledged that a conversation had occurred during which she had told the manager that a report should be filed with the state pharmacy board, although Respondent stated she had stated the fact of the litigation should be reported.

{17} It appears, therefore, that just as the committee had doubted Respondent's version of the facts surrounding her knowledge of reports of a pill discrepancy, it also doubted her version of the facts surrounding the report of the missing methadone tablets. Because there was evidence to support the committee's findings that Respondent knew that a report of a mis-filled prescription resulting in missing methadone had been filed with the state pharmacy board, and because the reviewing body does not reweigh the evidence or substitute its judgment for that of the fact finder, *In re Bristol*, 2006–NMSC–041, ¶ 19, 142 P.3d 905, the panel erred when it rejected the findings on this issue and instead reweighed the credibility of the witnesses in order to make its own findings. *Id.* ¶¶ 19, 23.

**Findings Addressing the Forged Prescription**

{18} In the underlying lawsuit, Respondent introduced into evidence, through the pharmacist, a prescription that was shown to be a forgery. The hearing committee found that, regardless of how Respondent came by the forged prescription, which appeared to come into her possession about a week before trial, she relied on it at trial without verifying its authenticity in any manner. Although the panel states that it rejected these findings, it is not clear to us from the amended order on remand whether it actually rejected the finding that Respondent failed to verify the authenticity of the prescription or rejected only the conclusion that she had a professional duty to investigate the evidence. It appears to have been acknowledged by both Respondent and disciplinary counsel that the prescription was forged, and the committee did not find that Respondent knew this or knowingly introduced a forged document into evidence. Thus the factual finding that Respondent introduced a forged document because she did not verify its authenticity appears indisputable. Accordingly, the panel erred in rejecting this purely factual finding.

## CONCLUSIONS OF LAW

{19} As we stated in *In re Bristol*, 2006–NMSC–041, ¶ 18, 142 P.3d 905, review of the hearing committee's conclusions of law is *de novo*. We therefore determine whether the law was correctly applied to the facts found by the committee, which we have determined were supported by substantial evidence. *See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991) ("When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary.").

{20} The hearing committee determined that Respondent's conduct in the course of the underlying lawsuit violated Rules 16–101,

16–102(D), 16–301, 16–303(A)(1), 16–304(A), 16–304(D), 16–804(C), 16–804(D), and 16–804(H) NMRA. We address each rule in turn.

### Rule 16–101

{21} The hearing committee concluded that Respondent's conduct in (1) denying the plaintiff's request for admission of the existence of records indicating a shortage of methadone tablets, (2) failing to produce the report filed with the New Mexico Board of Pharmacy, and (3) failing to verify the authenticity of the forged prescription that was introduced into evidence violated Rule 16–101, which states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Generally, this rule addresses whether less experienced attorneys have sufficient knowledge and skill to handle their cases. *See, e.g., Lewis v. State Bar,* 28 Cal.3d 683, 170 Cal.Rptr. 634, 621 P.2d 258, 261–62 (1981) (Bird, C.J., concurring) (noting that the rule governing competence "appears to fall disproportionately on *younger* members of the legal profession who begin their careers as solo practitioners"); *In re Yacavino,* 100 N.J. 50, 494 A.2d 801, 803 (N.J.1985) (condemning law firm's attitude of leaving new lawyers to "sink or swim"). But failure to respond to discovery has been held to be a failure of competent representation. *See In re Moore,* 329 S.C. 294, 494 S.E.2d 804, 807 (1997) (finding that failure to reply to discovery requests violated South Carolina's Rule 1.1 which requires an attorney to provide competent representation to a client). And, in our view, failure to understand what is required by the discovery rules demonstrates incompetence. In addition, Respondent's failure to verify the authenticity of the forged prescription demonstrates incompetence because it shows a lack of thoroughness in preparing for trial that resulted in a mistrial in this case. *See Model Rules of Prof'l Conduct* R. 1.1 cmt. 5 (2003) ("Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem[.]"). Accordingly, we hold that the hearing committee did not err in concluding that Respondent violated Rule 16–101.

### Rule 16–102(D) and Rule 16–301

{22} The hearing committee also concluded that Respondent's conduct violated Rule 16–102(D), which states that "[a] lawyer shall not engage, or counsel a client to engage, or assist a client, in conduct that ... misleads the court[.]" In addition, the hearing committee determined that Respondent violated Rule 16–301, which states that lawyers "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous." It is well established that "[l]awyers are officers of the court and are always under an obligation to be truthful to the court." *Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 339, 695 P.2d 483, 489 (1985). And this Court has also held that although this rule recognizes that the law is not static, allowing for exceptions to expand the law, *see In re Richards,* 1999–NMSC–030, ¶ 12, 127 N.M. 716, 986 P.2d 1117, we have also made clear that the exception is not to be exploited for tactical reasons in litigation, *see In re Bloomfield,* 121 N.M. 605, 606, 916 P.2d 224, 225 (1996) (stating that the exception does apply to pursuing an invalid claim in the hopes of achieving settlement). In this case, the hearing committee found that Respondent was aware that her client's records indicated that the prescription at issue in the underlying lawsuit had been mis-filled. Indeed, she advised her client that it should "admit liability and complete discovery to determine damages in preparation for a possible settlement."

{23} However, this was not what happened. Instead, Respondent relied on representations from the pharmacist, a pharmacy manager, and out-of-state counsel for the pharmacy that the missing drugs could be accounted for and followed their advice to investigate other possible sources for the methadone that harmed the plaintiff. Rather than using her independent judgment, and thus exercising her independent duty to the New Mexico courts, Respondent proceeded with a defense of the case that was contrary to the evidence she had found and which she

did not provide in discovery. Relying solely on the representations of her clients, and without a thorough independent investigation of the evidence, she also introduced a forgery into evidence. In pursuing this course of action, Respondent pursued a meritless defense and misled the court. She certified to the court that she had responded to discovery requests, and she pursued a defense that her own investigation indicated was unsupported by the evidence. Thus, the defense was based on misrepresentations of what had occurred.

{24} Although Rule 16–102(A) states that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation," the rule also requires that, "[w]hen a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct," Rule 16–102(E). As the ABA observes, under circumstances when a client engages in fraudulent or criminal conduct: "A lawyer may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the representation of the client in the matter." *Model Rules of Prof'l Conduct* R.1.2 cmt. 10 (2003).

■ {25} The hearing committee expressed some concern for Respondent's situation in this case, noting that she was "a relatively inexperienced attorney in her law firm" when she was assigned responsibility for the case, that she "was consistently and forcefully instructed" by out-of-state national counsel that the discrepancy would be accounted for, and that her recommendation to admit liability was opposed by that counsel. While acknowledging the difficulty of Respondent's position, we emphasize that any attorney who is licensed to practice in this state—regardless of the pressures imposed when working with out-of-state counsel—has an independent duty to the New Mexico judiciary to obey New Mexico's ethical and discovery rules. *See Fontaine v. Ryan,* 849 F.Supp. 242, 245 (S.D.N.Y.1994) ("Even if a client seeks to insist on questionable conten-

tions in a lawsuit, an attorney has the professional obligation to the client, the court and the adversaries to insure that only appropriate steps are taken.").

{26} It appears that Respondent was a subordinate lawyer in her law firm, but it does not appear from the facts of this case, and it was not Respondent's defense, that she was instructed in her course of conduct by the supervising attorneys in her own firm. Indeed, even if that were the case, under Rule 16–502(A) NMRA, "[a] lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person." In this case, Respondent allowed herself to be guided by an attorney who was not her supervisor and who did not have the same ethical responsibilities to the New Mexico judiciary. Moreover, even if Respondent had been instructed in her course of action by a licensed New Mexico attorney, this is not a case in which Respondent was presented with an arguable question of duty that was subsequently decided by her supervisor. The discovery rules are clear, and Respondent's own correspondence demonstrates that she knew the evidence she uncovered in her investigation was significant. And, as this Court recognized in *In re Howes*:

> When others are involved in misconduct with counsel, degrees of culpability may vary, but ultimate responsibility does not. Counsel simply cannot delegate to others their own duty to act responsibly ... [in] the end, each member of the bar is an officer of the court. His or her first duty is not to the client or the senior partner, but to the administration of justice.

1997–NMSC–024, 123 N.M. 311, 316, 940 P.2d 159, 164 (quoted authority omitted).

{27} In this case, Respondent placed her duty toward the New Mexico judiciary and the administration of justice in a subordinate position to the desires of her client to succeed in litigation. It should be clear to the Members of the New Mexico Bar and those who provide or offer to provide legal services here, that such conduct will not be tolerated. Because Respondent failed to comply with the discovery rules and failed to thoroughly investigate the legitimacy of a prescription,

serendipitously discovered just before trial, explaining the discrepancy in the pill count, we hold that the hearing committee did not err when it determined Respondent violated Rule 16–102(D) by pursuing a meritless defense by assisting her client in conduct that misled the court. Because Respondent failed to comply with the discovery rules and failed to thoroughly investigate the legitimacy of a prescription, serendipitously discovered just before trial, explaining the discrepancy in the pill count, we hold that the hearing committee did not err when it determined Respondent violated Rules 16–102(D) and 16–301 by pursuing a meritless defense and assisting her client in conduct that misled the court.

**Rule 16–303(A)(1)**

█ {28} Based on Respondent's failure to verify the authenticity of the forged prescription before introducing it into evidence, the hearing committee determined that she had "in effect" violated Rule 16–303(A)(1), which provides that "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal." There appears to be no dispute that the prescription was forged and that it was introduced into evidence. However, the hearing committee did not specifically find that Respondent knew the document was forged or that she knowingly made a false statement to the tribunal. And in its conclusions of law, the committee did not conclude that Respondent had violated Rule 16–303(A)(1). Under these circumstances, where the committee did not find that Respondent knew the prescription was forged, we hold that Respondent did not violate Rule 16–303(A)(1).

**Rule 16–304**

█ {29} Rule 16–304 addresses the issue of an attorney's duty to be fair to the opposing party and opposing counsel. The hearing committee determined that by failing to respond to discovery requests, Respondent violated Rule 16–304(A), which specifically states that a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel

or assist another person to do any such act." In addition, the committee found that Respondent's failure to respond to discovery requests violated Rule 16–304(D), which states that a lawyer shall not "in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Specifically, the committee concluded that these rules were violated by Respondent's failure to respond to discovery requests and admit that records of missing methadone tablets existed and produce the report filed with the New Mexico Board of Pharmacy disclosing that the pharmacist had mis-filled a prescription.

{30} As the ABA observes, "[t]he procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. *Model Rules of Prof'l Conduct* cmt. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." *Model Rules of Prof'l Conduct* R. 3.4 (2003). Courts in other jurisdictions have held that concealing documents with potential evidentiary value violates ethical rules. *See, e.g., Briggs v. McWeeny*, 260 Conn. 296, 796 A.2d 516, 535–40 (2002) (holding that attorney who failed to disclose an engineering report with potential evidentiary value violated the state's rules of professional conduct); *Miss. Bar v. Land*, 653 So.2d 899, 900–01 (Miss. 1994) (concluding that attorney's concealing of evidence of cause of injury in responding to interrogatories was a violation of the rules).

█ {31} Although the hearing panel was persuaded by Respondent's argument that her responses to discovery were "technically, if not hyper-technically correct," in our view the ethical rules do not tolerate such hair-splitting. When requests are made to admit the existence of identifiable records or to produce identifiable documents, attorneys have an obligation under the rules to do so. Our system of justice is built on the assumption that trials are fair. "Cases addressing

discovery and specifically NMRA 1997, 1–026, have determined that the rules intend liberal pretrial discovery." *Hartman v. Texaco Inc.*, 1997–NMCA–032, ¶ 18, 123 N.M. 220, 937 P.2d 979; *Richards v. Upjohn*, 95 N.M. 675, 681, 625 P.2d 1192, 1198 (Ct.App. 1980).

{32} As we stated in *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 169, 629 P.2d 231, 245 (1980), in construing our discovery rules, "we must begin with the notion that discovery is designed to 'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Id.* (quoted authority omitted). Thus, when attorneys do not comply with the rules of discovery, rather than engaging in zealous advocacy for their clients, they are violating their professional obligations to the system of justice itself. Accordingly, we hold that the hearing committee did not err when it concluded, based on its findings, that Respondent had violated Rules 16–304(A) and (D).

## Rule 16–804

{33} In addition, the hearing committee determined that Respondent violated Rule 16–804, which addresses professional misconduct in general. The committee concluded that by violating the discovery rules, Respondent had engaged (1) in conduct involving dishonesty, fraud, deceit, or misrepresentation, a violation of Rule 16–804(C); (2) in conduct that was prejudicial to the administration of justice, a violation of Rule 16–804(D); and (3) in conduct that adversely reflected on Respondent's fitness to practice law, a violation of Rule 16–804(H). And by failing to verify the authenticity of the forged prescription, the committee determined that, although Respondent had not engaged in conduct involving dishonesty, she had engaged in conduct that was prejudicial to the administration of justice and conduct that adversely reflected on her fitness to practice law. In light of the committee's factual findings, and because we have determined that the committee's conclusions regarding Rules 16–101, –102, and –304 correctly applied the law to those facts, we also hold that the committee did not err when it concluded that Respondent also violated Rule 16–804.

## RECOMMENDATIONS ON DISCIPLINE

{34} "[T]he level of discipline to impose is a matter that this Court, and the hearing panel, considers independently under a *de novo* standard of review." *In re Bristol*, 2006–NMSC–041, ¶ 30, 142 P.3d 905. The hearing committee recommended that Respondent be suspended from the practice of law for a period of six months to one year. The hearing panel, determining that no rule violations had occurred, did not address the question of discipline.

{35} In imposing discipline pursuant to Rule 17–206 NMRA, this Court looks to the *ABA Standards for Imposing Lawyer Sanctions* (1992) (*ABA Standards*) for guidance. *See In re Key*, 2005–NMSC–014, ¶ 5, 137 N.M. 517, 113 P.3d 340. These standards "serve as a *model* which sets forth a comprehensive system of sanctions, but which leaves room for flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct." Preface to *ABA Standards*. The *ABA Standards* state:

In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:

(a) the duty violated;

(b) the lawyer's mental state; and

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

*ABA Standards* § 3.0. We have concluded that Respondent violated her duty of competent representation and obstructed another party's access to evidence. She also engaged in conduct that misled the court, involved misrepresentation, was prejudicial to the administration of justice, and adversely reflected on the practice of law.

Under Section 6.12 of the *ABA Standards:*

Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no

remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

The commentary to Section 6.12 clarifies the circumstances when suspension, as opposed to either disbarment or reprimand, is appropriate for misrepresentation:

Suspension is appropriate when a lawyer has not acted with intent to deceive the court, but when he knows that material information is being withheld and does not inform the court, with the result that there is injury or potential injury to a party, or an adverse or potentially adverse effect on the legal proceeding.

By contrast, the *ABA Standards* explain, disbarment is appropriate for intentional conduct, and a reprimand is appropriate for negligent conduct. *Cf.* § 6.11 and § 6.13.

{36} In *In re Bristol*, we reversed the hearing panel's recommendation to suspend the attorney because it was accepted that his conduct was negligent. *In re Bristol*, 2006-NMSC–041, ¶ 31, 142 P.3d 905. The hearing committee in that case recommended an informal reprimand. *Id.* ¶ 30. However, because the attorney's negligence had serious consequences in that case, we publically censured the attorney. *Id.* In this case, because we have affirmed the committee's findings that Respondent knowingly violated the discovery rules, which had an adverse effect on the proceedings and a potentially adverse effect on the opposing party, suspension is the appropriate form of discipline, and we suspend Respondent from the practice of law for a period of one year effective on the date this opinion is filed.

{37} However, we agree with the committee that mitigating circumstances exist in this case. *See ABA Standards* 9.31 (stating that mitigating circumstances are factors that "may justify a reduction in the degree of discipline to be imposed"). Respondent, as the committee found, was relatively inexperienced when the defense of the personal injury case was assigned to her, to act as lead counsel. In addition, she was pressured by the supervising out-of-state counsel. Under those circumstances, she was vulnerable to the influence of out-of-state counsel, who was more experienced than she was. In light of this, we are convinced that Respondent can continue to provide legal services with the proper supervision. We therefore exercise our discretion to defer Respondent's suspension and place her on probation pursuant to Rule 17–206(B)(1).

■ {38} Finally, while we have no authority to impose requirements on attorneys who are neither licensed to practice law in this state nor providing legal services here, *see* Rule 16–805 NMRA, we emphasize that when lawyers are licensed to practice here or providing legal services in this jurisdiction, they are subject to our rules and will be held responsible for actions they take in violation of those rules. In addition, although the findings do not indicate how much guidance Respondent was given from the supervising partners in her law firm, we note that under Rule 16–501(A) NMRA, the supervising attorneys in Respondent's firm at the time of the underlying litigation were required to ensure that she complied with the Rules of Professional Conduct, and thus, the law firm bears some responsibility for the costs resulting from this action. Under the procedural posture of this case, however, which was brought against Respondent alone, the law firm has no legal obligation to pay them. Whether or not the law firm is inclined to assist Respondent in paying the costs of these proceedings, Respondent is ultimately responsible to ensure that the costs are paid as set forth below.

{39} For the foregoing reasons, we defer the imposition of the suspension for one year, pursuant to Rule 17–206(B)(1), and place Respondent on probation for that time because "[p]robation is appropriate for conduct which may be corrected." *ABA Standard* 2.7 cmt. During the period of deferred suspension, while Respondent is on probation, she shall satisfy the following conditions:

A. Respondent shall meet with a supervising attorney on such a regular basis as directed by the Disciplinary Board. The Disciplinary Board will recommend to the Supreme Court, for approval and appointment, the person to

serve as Respondent's supervising attorney while on probation. The supervising attorney shall report monthly on the progress and outcome of the probation program to the Supreme Court and the Disciplinary Board, and upon successful completion of probation, the supervising attorney shall certify to the Disciplinary Board and this Court that Respondent has completed her probation.

B. Respondent shall pay the supervising attorney for his or her services at an hourly rate to be determined by an agreement between Respondent and her supervising attorney and approved by the Disciplinary Board.

C. Respondent shall reimburse the Disciplinary Board for its costs in bringing this action in the amount of $6,499.59 within one month of the date of the filing of this opinion.

D. At the conclusion of the probationary period, Respondent shall comply with the requirements of Rule 17–214(H) NMRA.

{40} **IT IS SO ORDERED.**