# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: February 6, 2017**

**NO. S-1-SC-35469**

**IN THE MATTER OF EMILIO JACOB CHAVEZ, ESQUIRE**
**An Attorney Licensed to Practice Law Before the Courts**
**of the State of New Mexico**

**Consolidated With:**

**IN THE MATTER OF DONALD A. GALLEGOS, ESQUIRE**
**An Attorney Licensed to Practice Law Before the Courts**
**of the State of New Mexico**

William D. Slease, Chief Disciplinary Counsel
Christine E. Long, Assistant Disciplinary Counsel
Albuquerque, NM

for Disciplinary Board

William Riordan & Associates
William Riordan
Albuquerque, NM

for Respondent Emilio Jacob Chavez

Ahmad Assed & Associates
Ahmad Assed
Richard J. Moran
Albuquerque, NM

for Respondent Donald A. Gallegos

**OPINION**

**VIGIL, Justice.**

{1}     This disciplinary action involves Respondents Emilio Jacob Chavez, Deputy District Attorney for the Eighth Judicial District, and his supervisor Donald A. Gallegos, District Attorney for the Eighth Judicial District. Over the course of two years, Chavez engaged in a pattern of issuing investigative subpoenas unconnected to court or grand jury proceedings. Gallegos authorized the issuance of a subset of the subpoenas, but was unaware of most of them.

{2}     We hold that Chavez violated Rule 16-404(A) NMRA of the Rules of Professional Conduct, and that Gallegos violated Rules 16-404(A) and 16-501(C) NMRA of the Rules of Professional Conduct. This opinion clarifies an issue of fundamental importance: it is unlawful for a court or an officer of the court to issue any subpoena in the absence of a pending judicial action.

**I.     BACKGROUND**

{3}     Between 2012 and 2013, Chavez signed and issued at least ninety-four subpoenas concerning numerous separate investigations. The subpoenas were directed primarily to various cellular phone providers seeking subscriber information and call activity in order to narrow potential suspects, but several sought medical records, CYFD records, and utility records. The subpoenas were not issued by a

sitting grand jury nor reviewed by any judicial officer and were not connected to any cases before the court. All of the subpoenas were filed with the Eighth Judicial District Court prior to service and assigned to a miscellaneous criminal file. Because there were no cases, there were no parties, and so Chavez issued the subpoenas without notice to the individuals whose information was being sought. Many of the subpoenas were captioned *State of New Mexico v. John Doe*.

{4} During a robbery investigation in April 2013, Chavez and a detective wished to issue subpoenas *duces tecum* for investigative purposes and asked Gallegos to approve them. Respondents conducted research into the issuance of such subpoenas and concluded that they were lawful. Gallegos eventually approved the practice of issuing investigative subpoenas for phone subscriber information. Eleven subpoenas were issued in connection with the robbery investigation. In October 2013, defendants in the robbery case filed a motion to quash their indictments based on the improper issuance of subpoenas. The motion was granted and the state appealed to the Court of Appeals. That appeal is now pending before this Court. *State v. Martinez*, No. 35,757, order of certification at 1-2 (N.M. Ct. App. Mar. 7, 2016) (non-precedential).

{5} In October 2014, the Disciplinary Board initiated disciplinary actions against

2

Respondents over the issuance of the subpoenas. The Disciplinary Board alleged that Chavez unlawfully issued subpoenas, improperly issued subpoenas without notifying parties in several of the controversies, and issued subpoenas that failed to follow proper form as required by Rule 5-511 NMRA and Form 9-217 NMRA. The Disciplinary Board claimed Chavez violated Rules 16-101 NMRA, 16-304(A), (C) NMRA, 16-305(C) NMRA, 16-404(A) NMRA, and/or 16-804(D) NMRA. Aside from the subpoenas Gallegos authorized in the robbery case, he did not know of any others until the filing of the disciplinary action. Gallegos also did not know that subpoenas had been issued in improper form, had been issued without notice to parties in the various cases, or had been improperly filed. Gallegos is implicated primarily due to his supervisory position with respect to Chavez. The Disciplinary Board claimed violations against Gallegos including Rules 16-101, 16-304(A), (C), 16-305(C) 16-404(A), 16-501(A)-(C), and/or 16-804(D).

{6} The Disciplinary Board designated a Hearing Committee, which found that Chavez's research into the issuance of the subpoenas was reasonable and thorough, had not revealed a clear answer to the question, and that neither Respondent had "knowingly avoided or subverted a legal obligation or duty arising from either of their respective offices." The Hearing Committee found that disciplinary counsel had

3

failed to prove violations of the Rules of Professional Conduct by either Respondent and recommended that the charges of misconduct be dismissed as to both Respondents.

{7}     On review of the Committee's findings, Disciplinary Board counsel rejected numerous findings of fact as containing conclusions of law, including findings that the Respondents had acted reasonably, and disagreed with the Hearing Committee's conclusions of law.

{8}     The disciplinary panel recommended, and the Disciplinary Board requested of this Court, formal reprimand for Gallegos and public censure, a more serious punishment, for Chavez. The Board also recommended that costs for the disciplinary action be shared between the Respondents. At the conclusion of the hearing before this Court, we ruled from the bench that both Respondents should receive formal reprimands but deferred the issuance of those formal reprimands for one year and provided that the issuance of the formal reprimands would be automatically withdrawn if the Respondents committed no further violations of the Rules of Professional Conduct during the one-year deferral period. We also denied the assessment of costs against the Respondents and indicated that we would issue an opinion at a later date to further explain our decision.

4

## II.    DISCUSSION

{9}    Rule 17-316(A)(1) NMRA grants this Court the authority to review the disciplinary recommendation of a public censure against Chavez. Rule 17-316(A)(2), subparagraphs (b) and (d) grant this Court authority to review the recommendation of a formal reprimand against Gallegos because the Disciplinary Board's petition alleges a significant question of law and an issue of substantial public interest.

{10}    With respect to the findings and conclusions of a hearing committee, the standard of review for a disciplinary panel and for this Court is the same: both entities afford deference to findings of fact and review conclusions of law de novo. *In re Bristol*, 2006-NMSC-041, ¶¶ 18, 26, 140 N.M. 317, 142 P. 3d 905. This Court is not bound by the Disciplinary Board's legal conclusions about which Rules of Professional Conduct have been violated by Respondents. *See In re Estrada*, 2006-NMSC-047, ¶¶ 7, 19, 140 N.M. 492, 143 P.3d 731. This Court also does not defer to recommendations regarding the appropriate level of discipline; we are free to impose lesser or greater levels of discipline as we deem appropriate. *Bristol*, 2006-NMSC-041, ¶ 27.

**A.    The Law Does Not Support The Unilateral Issuance of Subpoenas**

{11}    Rule 5-511(A)(1)(b) provides that every subpoena shall "state the title of the

action and its criminal action number." Rule 5-511(A)(2) further provides that "[a]ll subpoenas shall issue from the court for the district in which the matter is pending." This language plainly requires that subpoenas be issued only in connection with existing judicial actions. The Court of Appeals declared unauthorized subpoenas to be prosecutorial misconduct in 1985 after a district attorney unilaterally issued subpoenas to financial institutions while investigating an embezzlement case. *State v. Eder*, 1985-NMCA-076, ¶¶ 2, 5, 103 N.M. 211, 704 P. 2d 465. The Court of Appeals stated that using unauthorized subpoenas to compel witnesses to produce documents "has been deemed coercive and intimidating. To the extent that an unknowing witness may feel compelled to attend or produce documents, the practice amounts to perpetrating a deceit on the witness." *Id.* ¶ 5. The Court of Appeals has also held that not even a sitting district court judge possesses the authority to compel a person to submit evidence when no complaint, information or indictment has been filed against the person and thus when no criminal prosecution has commenced. *Sanchez v. Attorney General*, 1979-NMCA-081, ¶¶ 12, 20, 93 N.M. 210, 598 P. 2d 1170.

{12}	Respondents argue that they made a reasonable decision in issuing the subpoenas at issue because their research revealed no New Mexico authority

6

disallowing the process. Chavez relied on several authorities that he determined were ambiguous on the issue: NMSA 1978, Section 36-2-11 (1953); federal stored communications laws, 18 U.S.C. §§ 2701-2712 (2012); and Rule 1-045 NMRA.

{13}     Section 36-2-11(A) provides:

> An attorney has authority: to execute in the name of his client any bond or other written instrument necessary and proper for the prosecution of an action or proceeding about to be or already commenced, or for the prosecution or defense of any right growing out of an action, proceeding or final judgment rendered therein[.]

We read the language "an action . . . about to be or already commenced" to include only those actions sanctioned by a grand jury or a district court. This view is supported by *Sanchez*. 1979-NMCA-081, ¶¶ 27-28. We hold that Section 36-2-11(A) does not provide authority for a prosecutor to unilaterally issue subpoenas prior to the commencement of a judicial action.

{14}     The federal communications laws on which Chavez relied provide that a governmental entity may require the disclosure of stored electronic communication records "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." 18 U.S.C. § 2703(a). Subsection (b)(1) provides that notice to customers or subscribers is not required

7

where the information is requested pursuant to a warrant but is required if the information is requested pursuant to a court order or "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena." As Chavez recognized, this authority does not address the question of whether an action must be pending before a subpoena issues.

{15} Rule 1-045 is a Rule of Civil Procedure analogous to the Rule of Criminal Procedure, Rule 5-511, applicable to this case. One of the differences between the rules appears in Rule 1-045(A)(3), which provides that "[a]n attorney authorized to practice law in New Mexico and who represents a party, as an officer of the court, may also issue and sign a subpoena on behalf of the court." The rule provides no authority for the issuance of a subpoena by a prosecutor in the absence of the court's authority; without such authority, a prosecutor is not acting "on behalf of the court." Further, both rules require that a subpoena state the title of the action and its case number. Rule 1-045(A)(1)(b); Rule 5-511(A)(1)(b). It is impossible to include an accurate title and case number when no judicial action has been established.

{16} Chavez concluded that in the absence of an express prohibition, the issuance of unilateral subpoenas should be permissible, and he convinced Gallegos of the same. We disagree for several reasons. As a practical matter, we read all of the laws

8

relied upon by Chavez—Section 36-2-11, 18 U.S.C. Section 2703, and Rule 1-045—to require a court's acquiescence to the issuance of a subpoena, and this in turn requires an existing judicial action. More importantly, as a matter of fundamental policy, we emphasize that the absence of a prohibition does not equal permission.

{17} Prosecutors bear significant responsibility in the administration of the law. The Ninth Circuit has observed, "[t]he Government is the strongest litigant in the world. You have got the F.B.I. and all the government agencies available to you. You represent the strongest client in the world." *Lenske v. United States*, 383 F.2d 20, 22 (1967). The United States Supreme Court has said that the United States Attorney represents not an ordinary party to a controversy but

> a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935). This duty of fairness extends to all parties to judicial actions, and in this case it extended to the recipients of subpoenas as well as the people whose information was being sought, none of whom were parties to judicial actions.

{18} Disciplinary counsel identified the gravamen in this case as the Respondents'

issuance of "pre-indictment" subpoenas. As a point of clarification, pre-indictment subpoenas are not per se unlawful. Subpoenas are routinely issued pre-indictment in connection with grand jury proceedings under NMSA 1978, Section 31-6-12(A) (1979):

> The grand jury has power to order the attendance of witnesses before it, to cause the production of all public and private records or other evidence relevant to its inquiry and to enforce such power by subpoena issued on its own authority through the district court convening the grand jury and executed by any public officer charged with the execution of legal process of the district court.

{19} Necessarily, subpoenas issued pursuant to that statute in a grand jury proceeding are pre-indictment subpoenas. Conversely, some post-indictment subpoenas may be unlawful. For example, if these same subpoenas were issued unilaterally by a prosecutor or defense attorney or other lawyer after dismissal or other resolution of a case, they would be unlawful even though they occurred after indictment. The problem in this case was not whether the subpoenas were issued pre-indictment or post-indictment, but that they were not issued in connection with an authorizing proceeding.

**B.      The Issuance of Unilateral Subpoenas Violated the Rules of Professional Conduct**

10

{20} We hold that Chavez violated Rule 16-404(A) and that Gallegos violated Rules 16-404(A) and 16-501(C). Rule 16-305(D) requires intent to disrupt a tribunal, which is not evident here. Respondents' conduct did arguably implicate the remaining rules, but because Rules 16-404(A) and 16-501(C) adequately address the conduct, we decline to reach violations of Rules 16-101, 16-304, or 16-804.

{21} Rule 16-404(A) provides that "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Chavez has argued that no rights were violated because a defendant lacks a right to know who is subpoenaed for grand jury proceedings, and because no evidence was presented supporting the claim that any individual's rights were violated. Gallegos cites *Smith v. Maryland* for the proposition that telephone subscribers should harbor no expectation that the numbers they dial will remain secret. 442 U.S. 735, 743 (1979). But *Smith* is plainly distinguishable. *Smith* considered the admissibility of dialed phone numbers detected by a monitoring device installed on a defendant's line by a phone company at the request of police. *Smith*, 442 U.S. at 737. The United States Supreme Court held that such a monitoring device does not constitute a search under

11

the Fourth Amendment to the United States Constitution and that defendants should not expect privacy in the numbers they dial. *Id.* at 742. *Smith* does not address the key issue in this case, which is the improper issuance of subpoenas.

{22}    Form 9-217, which provides a template for subpoenas, contains a stern warning to its addressees: "IF YOU DO NOT COMPLY WITH THIS SUBPOENA you may be held in contempt of court and punished by fine or imprisonment." In this case, sending subpoenas that implied court authority, but lacked it, affected the rights of the subpoena recipients and third parties in two impermissible ways. First, the unauthorized subpoenas sent to communications providers unfairly deprived those providers of the right to conduct ordinary business and forced them to expend resources and personnel to respond before a response was required in the name of justice. Second, because the subpoenas were unconnected to pending judicial actions, the third parties whose information was being sought were not parties, were not notified, and therefore had no opportunity to contest the release of their personal information. This is especially troublesome in the few cases where the subpoenas sought private information including medical records, CYFD records, and utility records. Furthermore, in general, the practice of issuing subpoenas outside the

12

authority and acquiescence of a court or a grand jury poses foreseeable and alarming risks to the fundamental rights of ordinary citizens. A person may have a right to decline to cooperate with a police investigation. Once a subpoena issues properly, it deprives the recipient of the right not to cooperate. A subpoena that issues improperly, but has the guise of authority and carries the threat of punishment, falsely suggests that the recipient is legally required to answer and has therefore lost the right not to respond. This is misleading and unfair, and represents an abuse of the government's substantial power and responsibility.

{23}    Gallegos alone violated Rule 16-501(C), which provides that a supervising attorney bears responsibility for a subordinate's violation if the supervising attorney knows about the improper conduct and ratifies it, or if the supervising attorney knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action. Gallegos argues that he did not know the issuance of unilateral subpoenas was improper, and therefore he did not knowingly endorse a violation. We hold that Gallegos did knowingly ratify the issuance of the subpoenas, and his mistake as to the law does not protect him. Based on the analysis above, Gallegos should have known that the issuance of the subpoenas violated the Rules of

13

Professional Conduct. Furthermore, we are concerned that Gallegos was not aware of the practice until Chavez brought it to his attention and that his office lacked sufficient controls to preclude the practice. We urge New Mexico district attorneys to maintain sufficient training and oversight to avoid the improper issuance of subpoenas in the future.

**C.    Disciplinary Disposition**

{24}    The American Bar Association (ABA) Standards for Imposing Lawyer Sanctions, Standard 5.22, provides that suspension is the appropriate consequence "when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process." Because Respondents should have known that the subpoenas in these cases were issued without legal support and in violation of our Rules of Professional Conduct, suspension might ordinarily be the proper course. However, this Court recognizes that there is no evidence in the record to show Respondents exhibited bad faith or an intent to deceive when they issued the subpoenas. We also recognize that Respondents have complied fully with the disciplinary proceedings against them. Both of these are factors warranting mitigation

14

under ABA Standards 9.32(b) and (e).

{25} We hold that formal reprimand is the proper sanction for both Respondents, and as previously ordered by this Court, the reprimand as to each Respondent has been deferred for one year. If neither Respondent engages in further violations of the Rules of Professional Conduct within that time, the reprimands will be withdrawn. We also waive Respondents' costs arising from this proceeding.

{26} **IT IS SO ORDERED.**

_____
**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

15

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**JUDITH K. NAKAMURA, Justice**

16