# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: November 20, 2018

**No. A-1-CA-35562**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**JOHNNY SALAZAR,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ATTREP, Judge.**

{1} Defendant Johnny Salazar appeals his convictions for aggravated driving while intoxicated (DWI), in violation of NMSA 1978, Section 66-8-102(D)(3) (2016), and resisting, evading, or obstructing an officer, in violation of NMSA 1978, Section 30-22-1(B) (1981). Defendant contends no reasonable suspicion supported his detention and the district court thus erred in denying his motion to suppress. Defendant adds that the district court erred in compelling his counsel to return to the State video evidence the State had initially disclosed, and by failing to permit his counsel to withdraw based on a purported conflict. We affirm Defendant's convictions.

**BACKGROUND**

{2} In March 2015, a magistrate court jury found Defendant guilty of both aggravated DWI and evading an officer. Defendant appealed his convictions to district court, where he moved to suppress any evidence arising from his detention on the ground that reasonable suspicion was lacking. The district court held a hearing on the motion at which the arresting officer testified. The following recitation of facts is based on the officer's testimony.

{3} On an evening in late April 2014, New Mexico State Police set up a DWI checkpoint on Camino Real Road in Las Cruces, New Mexico. Camino Real Road

ran roughly north-south through the checkpoint. Cones and signs indicating the checkpoint's presence and directing drivers to stop were placed both north and south of the checkpoint. Multiple marked police vehicles, including a large state police van displaying the words "state police" in "huge letters" on its sides, were stationed at the checkpoint. At least two of the parked police vehicles were operating their overhead lights continuously. Among the officers on duty was patrolman Oliver Wilson, who was positioned furthest south on Camino Real Road.

{4} Just as the sun was setting, Wilson observed a red or maroon, four-door sedan approach the checkpoint from the south. The car traveled north on Camino Real a short distance past the intersection of Dona Ana School Road, which was visible from the checkpoint. Then, roughly one hundred yards south of where Wilson was stationed, the car pulled completely off the road onto the dirt shoulder "just before the cones" marking the checkpoint. Wilson, with an unobstructed view, noted the car lingered at the side of the road "long enough to be noticeable," before making a U-turn across the double-yellow lines of Camino Real. The car accelerated, turned right on Dona Ana School Road, and drove "rapidly" away from the checkpoint. Wilson's radar, however, was off, and he was unsure whether the car had at any point traveled faster than the posted speed limit or committed any other traffic violation. Even though there were no other vehicles obstructing

2

Wilson's view of the vehicle, he could not make out a license plate or any identifying features of the driver. Wilson could not recall whether the signs announcing the checkpoint would have been viewable from the vehicle at any point. Wilson, however, testified that the stop, pause, U-turn, and departure at a high rate of speed were uncharacteristic of traffic typically approaching the checkpoint—most traffic either turned at the Dona Ana School Road intersection or continued through the checkpoint.

{5}     Wilson testified that he "suspected, from [his] experience, that there was someone trying to avoid the checkpoint." Wilson shouted to his fellow officers that he had seen a "turnaround," jumped into his patrol car, activated his emergency lights, and drove off in pursuit. He made the right turn onto Dona Ana School Road and re-established visual contact with the car, which was by then ahead by "quite a distance." The car next turned right on Dona Ana Road. Wilson attempted to close the gap, but he was unsuccessful. As they traveled on Dona Ana Road, Wilson lost sight of the car.

{6}     Shortly after losing contact, Wilson came to a four-way stop at the intersection of Dona Ana Road and Thorpe Road. He had not seen the car approach this intersection, and, as a result, he had doubts about where to head next. He made his "best guess" and turned right, heading east along Thorpe Road. After driving in that direction briefly, Wilson noticed in his rearview mirror a maroon car parked in

3

the driveway of a duplex or triplex just east of the Dona Ana-Thorpe intersection. A man stood outside the car. Wilson believed, though he did not know, that this was the "same maroon vehicle" he had been pursuing. Wilson made a U-turn and approached the man standing next to the car. Wilson asked the man whether he had been trying to evade him, and the man conceded that he had. Wilson investigated further, identified the man as Defendant, and conducted field sobriety tests. Defendant performed poorly on the tests and refused to submit to chemical testing. Wilson later arrested Defendant for aggravated DWI (refusal) and evading an officer.

{7}     Defense counsel did not present evidence at the suppression hearing but offered to have the district court view the video from Wilson's dashboard video camera, which the court declined. Defendant argued that Wilson could not have developed reasonable suspicion based on his observation of the U-turn at the checkpoint and that, even if there was reasonable suspicion at the checkpoint, Wilson did not have the requisite particularized suspicion as to Defendant on Thorpe Road because Wilson lost contact in pursuit and guessed about Defendant's direction of travel. In ruling on the motion to suppress, the district court adopted much of Wilson's testimony in its oral findings. Specifically, the court found that Defendant had traveled past the Dona Ana School Road intersection on its approach to the checkpoint. Defendant had then paused on the shoulder, before

4

making the observed U-turn on Camino Real and accelerating away to "create distance" from Wilson. The court added that Wilson had pursued and lost sight of Defendant's vehicle briefly, but Wilson eventually reestablished contact with and detained Defendant as described on Thorpe Road. Based on those findings, the district court concluded that Wilson had reasonable suspicion to believe Defendant was or had been driving while under the influence. That suspicion, the district court concluded, supported Wilson's investigative detention, and thus the court denied Defendant's motion to suppress.

{8}     Defendant's case was slated to go to trial the week after the suppression hearing. The day before trial, the State realized it had lost or misplaced its only copy of Wilson's dashcam video. Before the magistrate court jury trial, the State had provided defense counsel a copy of the video. Aware that defense counsel had retained the copy, the State requested that defense counsel return to the State a courtesy copy. Defense counsel declined, and the State moved the district court to compel production. On the morning of the first day of trial, the district court granted the State's motion to compel, ordered defense counsel to produce a copy of the video to the State, and briefly adjourned.

{9}     Returning from the recess, defense counsel renewed her objection to production, contending the order to produce might give rise to a conflict as she could no longer give her undivided loyalty to Defendant. The district court

5

concluded production would raise no conflict and again ordered counsel to produce a copy of the video. Defense counsel complied and then moved to withdraw from her representation and for a new trial, maintaining that Defendant was entitled to conflict-free counsel. The court denied the motions. After Defendant was convicted of both aggravated DWI and evading an officer, defense counsel renewed in writing her motion for a new trial based on the order compelling production of the video. The district court denied the motion, concluding that Defendant had established "no substantial injustice" warranting a new trial. This appeal followed.

**DISCUSSION**

{10}    We first hold that reasonable suspicion supported Wilson's detention of Defendant and, thus, the district court did not err in denying Defendant's motion to suppress. Next, we conclude that the district court did not abuse its discretion in ordering Defendant to return a copy of the video that the State had provided to Defendant in discovery and in denying Defendant's related motion for a new trial. Finally, we hold that the district court did not err in denying defense counsel's motion to withdraw because counsel's compliance with the district court's order compelling production of the video did not create an actual conflict of interest.

**I.      Reasonable Suspicion Supported Defendant's Detention**

{11} Defendant maintains the district court erred in concluding Wilson had reasonable suspicion supporting Defendant's detention in the driveway on Thorpe Road. Defendant first contends that the facts known to Wilson when he departed the DWI checkpoint were insufficient to create reasonable suspicion that Defendant was or had been driving while under the influence. Defendant adds that the insufficiency was compounded when Wilson later lost sight of Defendant and guessed as to his route of travel. The parties agree that Wilson's investigation of Defendant constituted a seizure under the Fourth Amendment, which must be supported by reasonable suspicion.[1] *See State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111.

{12} A review of a denial of a motion to suppress presents a mixed question of fact and law. *See State v. Lowe*, 2004-NMCA-054, ¶ 8, 135 N.M. 520, 90 P.3d 539. We give deference to the district court's findings of fact, reviewing them for substantial evidence. *Id.* ¶ 9. We recognize fact-finding frequently requires the drawing and selection of specific inferences, and we indulge all reasonable

---

[1] Whether and at what point Wilson may have seized Defendant in this encounter, given the limited facts before us, is unclear. The parties agreed in contesting Defendant's motion to suppress that Defendant had been seized as a result of a traffic stop, and they contested only the grounds for the stop. The parties likewise have not addressed on appeal whether and when a seizure was made, and we give the questions no further attention. *See, e.g., State v. Garnenez*, 2015-NMCA-022, ¶ 15, 344 P.3d 1054 ("We will not address arguments on appeal that were not raised in the brief in chief and have not been properly developed for review.").

inferences in support of the district court's decision. *See State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). We have often explained a police officer may detain an individual in investigating potential criminal activity where the officer has formed a reasonable suspicion the individual "is breaking, or has broken, the law." *Id.* ¶ 8 (internal quotation marks and citation omitted). Reasonable suspicion must arise from "specific articulable facts," along with any "rational inferences that may be drawn from those facts." *Contreras*, 2003-NMCA-129, ¶ 5 (internal quotation marks and citation omitted).

**{13}** Our Supreme Court has provided specific guidance in evaluating whether reasonable suspicion may arise based on purportedly evasive driving behavior near a DWI checkpoint. *See generally State v. Anaya*, 2009-NMSC-043, ¶¶ 11-18, 147 N.M. 100, 217 P.3d 586. A legal turn in the vicinity of the checkpoint, for example, will not typically give rise to reasonable suspicion. *Id.* ¶ 16. As in all cases, however, an officer need not have observed illegal activity to develop reasonable suspicion. *Id.* ¶ 12. A legal turn observed in combination with other circumstances may well support a reasonable suspicion of criminal activity—particularly where the circumstances suggest the turn is made for the purpose of

8

evading the checkpoint. *Id.* ¶¶ 15-16. *Anaya* explained that various considerations may be relevant in discerning the driver's purpose for engaging in certain observed activity near a checkpoint. Whether the driver is on notice that the checkpoint is looming is clearly relevant in making the determination. *Id.* ¶ 16. Thus, questions such as whether the driver "was in a position to observe police emergency lights" emanating from the checkpoint and whether the driver could have observed signs announcing the checkpoint may aid in evaluating the purpose underlying the driver's behavior. *Id.* ¶ 18. Other considerations, such as the time of day, the location of the activity and its proximity to the checkpoint, the nature of the road, and the typicality of the conduct observed may also inform the evaluation. *Id.* ¶ 17. Evaluation of these and any other relevant circumstances should guide the determination of whether an officer may reasonably believe specific driving behavior constitutes an attempt to evade a checkpoint, which in turn may support a reasonable suspicion the driver is driving while intoxicated. *Id.* ¶ 16.

{14} The district court's findings and associated permissible inferences support a determination of reasonable suspicion here. The district court noted the vehicle had traveled on Camino Real Road past the intersection of Dona Ana School Road in the direction of the checkpoint. Before arriving at the checkpoint, the district court found, the vehicle paused on the shoulder for that period of time notable to Wilson before making its U-turn. Neither of those findings were disputed, and we

9

conclude both were supported by substantial evidence. The district court further found that after making the U-turn, the vehicle accelerated away from the checkpoint and must have maintained "an accelerated speed" as Wilson pursued, so as to maintain its distance ahead. While Defendant questions the basis for this latter finding, the district court was entitled to credit Wilson's observations, and we find no reason to reweigh Wilson's testimony here. *See, e.g.*, *State v. Martinez*, 2018-NMSC-007, ¶ 15, 410 P.3d 186 (deferring to district court's implicit acceptance of testifying officer's perceptions). Were we to end the analysis there, as Defendant appears to do, whether these findings alone—the location of the turn, the pause, the acceleration away from the checkpoint—supported the requisite reasonable suspicion is debatable. *See Anaya*, 2009-NMSC-043 ¶¶ 13, 16 (suggesting legal U-turn made in view of checkpoint may require additional circumstances to support reasonable suspicion).

{15} Yet the vehicle's progress past the Dona Ana School Road intersection and its roadside pause, when viewed in conjunction with the testimony regarding the checkpoint's visibility, the daylight remaining, the absence of any intervening traffic, and the vehicle's distance from the checkpoint, support inferences that the driver was aware of the checkpoint and tried to evade it. *See id.* ¶ 18 ("[The d]efendant was in a position to observe police emergency lights and other lights illuminating the checkpoint."). In addition, Wilson's testimony regarding traffic

10

patterns that evening suggested the U-turn and subsequent turn onto Dona Ana School Road were abnormal. That abnormality likewise supported inferences that the driver was aware of the checkpoint and sought to evade it. *See id.* ("[The d]efendant then proceeded in the opposite direction of travel, which was inconsistent with typical driving patterns given the location of the highway."). Wilson's testimony regarding the difficulty he had in tracking down the vehicle after he left the checkpoint only served to bolster the inference that the driver was engaging in evasive behavior. Under the totality of these circumstances, we conclude that Wilson had reasonable suspicion that the driver of the maroon vehicle was driving while intoxicated. *See id.* ¶ 16.

{16}    Despite the support for those inferences, Defendant makes much of the fact that Wilson lost sight of the vehicle and eventually resorted to his best guess as to where to head next when he reached the intersection of Dona Ana Road and Thorpe Road. When Wilson later came across Defendant standing next to a maroon vehicle in the Thorpe Road driveway, Defendant contends, Wilson could not possibly have had the requisite individualized suspicion with respect to Defendant to support a detention. No doubt an "unsupported intuition" regarding an individual falls short of the "particularized suspicion" necessary to subject the individual to an investigative detention. *Jason L.*, 2000-NMSC-018, ¶ 20. Particularized suspicion must be a suspicion based on all the circumstances known

11

to the officer that the "particular individual" detained is breaking or has broken the law, as distinct from a more generalized suspicion untethered to the individual. *See id.* Officers, however, need not limit themselves to their direct observations in developing suspicions, and they need not "exclude all possible innocent explanations of the facts and circumstances" they observe. *State v. Candelaria*, 2011-NMCA-001, ¶ 14, 149 N.M. 125, 245 P.3d 69 (internal quotation marks and citation omitted); *see State v. Alderete*, 2011-NMCA-055, ¶ 15, 149 N.M. 799, 255 P.3d 377. Instead, they may rely on their own experiences and specialized training to draw inferences and make deductions from the totality of information available to them—inferences and deductions that may well elude the untrained observer. *See Alderete*, 2011-NMCA-055, ¶ 15; *State v. Maez*, 2009-NMCA-108, ¶ 23, 147 N.M. 91, 217 P.3d 104.

{17}     Various facts and inferences supported Wilson's suspicion regarding Defendant here. Wilson testified about the lack of traffic at the checkpoint. His ability to observe the vehicle and its route of travel at a distance, despite the vehicle's substantial head start and apparently evasive behavior, reinforced the fact that there were few cars on the road to impede his pursuit or view that evening. That suggested the potential universe of suspects was small, as did the short length of the time that Wilson lost contact with the vehicle. *Cf. Commonwealth v. Bostock*, 880 N.E.2d 759, 764 (Mass. 2008) (finding reasonable suspicion existed

12

where the defendant was found in the vicinity of the alleged crimes within minutes of the crimes, the defendant matched the description given by witnesses, and upon canvass of the area no one else matching the description was found); *State v. Lovato*, 1991-NMCA-083, ¶ 11, 112 N.M. 517, 817 P.2d 251 (finding reasonable suspicion where "the incident involving the reported shooting occurred around midnight, the car occupied by defendants met the general description radioed by the police dispatcher, and there was no other vehicular traffic in the area"). And Defendant's maroon vehicle in the driveway, close in time and place to the pursuit here, placed him comfortably within that small population of suspects, strengthening the notion that Wilson's suspicion was sufficiently particularized. *Cf. United States v. Mosley*, 878 F.3d 246, 252 (8th Cir. 2017) (concluding that, given "the close temporal and physical proximity of the [vehicle] to the crime, the totality of the circumstances indicates that reasonable suspicion supported the vehicle stop and rendered it constitutional" (internal quotation marks and citation omitted)). The district court, thus, was free to credit Wilson's testimony that the maroon vehicle he spotted on Thorpe Road was "the same maroon vehicle" he had pursued from the checkpoint.

{18} Were the brief loss of visual contact by the pursuing officer in this case sufficient to eliminate reasonable suspicion, as Defendant suggests, this might condone a constitutional test not only inconsistent with our prior precedent but also

13

dismissive of the significant risk that fleeing drunk drivers pose to the public. We long have held that "in determining whether the totality of circumstances gave [the officer] a reasonable suspicion to stop [the d]efendant, we must balance the possible threat of drunk driving to the safety of the public with [the d]efendant's right to be free from unreasonable seizure." *Contreras*, 2003-NMCA-129, ¶ 13. We have repeatedly acknowledged the "compelling public interest" in eliminating drunk driving and its deadly consequences. *State v. Simpson*, 2016-NMCA-070, ¶ 24, 388 P.3d 277 (internal quotation marks and citation omitted); *State v. Nance*, 2011-NMCA-048, ¶ 26, 149 N.M. 644, 253 P.3d 934; *Contreras*, 2003-NMCA-129, ¶ 14. Where, as here, a driver appears to be deliberately evading a DWI checkpoint, giving rise to reasonable suspicion of DWI, and the driver then proceeds to speed away from that checkpoint, posing a substantial danger to others, "the exigency of the possible threat to public safety that a drunk driver poses . . . and the minimal intrusion of a brief investigatory stop tip the balance in favor of the stop[,]" notwithstanding that the pursuing officer lost sight of the fleeing vehicle for a brief period. *See Contreras*, 2003-NMCA-129, ¶ 21.

{19}     Given the observations Wilson made at the checkpoint and as he pursued the vehicle, as well as the reasonable inferences he drew under the circumstances, we conclude he had developed reasonable suspicion of DWI and evading an officer and those suspicions were sufficiently particularized with respect to Defendant.

14

Defendant's detention was therefore reasonable, and the district court did not err in denying Defendant's motion to suppress.

**II.     The District Court Did Not Err in Compelling Defendant to Produce the State's Video**

{20}     Turning to the issue of the return of the State's video, Defendant questions the basis for the district court's order compelling its production and the associated denial of Defendant's motion for a new trial. Neither our Rules of Criminal Procedure nor our Rules of Professional Conduct, Defendant observes, provide clear guidance for dealing with the State's loss of its copy of the video here. Defendant contends that in the absence of clear guidance no legal principle should require a defendant to provide the State with evidence harmful to the defendant's case.

{21}     We review discovery rulings for abuse of discretion. *See State v. Ortiz*, 2009-NMCA-092, ¶ 24, 146 N.M. 873, 215 P.3d 811. Abuse of discretion occurs when "the ruling is clearly against the logic and effect of the facts and circumstances of the case." *See State v. Layne*, 2008-NMCA-103, ¶ 6, 144 N.M. 574, 189 P.3d 707 (internal quotation marks and citation omitted). We will determine that an abuse of discretion has occurred only where we can conclude the ruling is "clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). We apply the same standard of review to the district

15

court's denial of Defendant's motion for new trial. *See State v. Guerra*, 2012-NMSC-027, ¶ 18, 284 P.3d 1076.

{22} The district court determined that while counsel's refusal to produce the video "arguably [was] not violative of the rules of discovery," it "[did] run afoul of the spirit, if not the letter, of Rule 16-304(A) [NMRA] of the Rules of Professional Conduct" and "serve[d] to undermine the truth-finding function of a trial[.]" Rule 16-304(A) directs that a "lawyer shall not . . . unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value[.]" The rule tells us nothing more, however, about what might constitute "unlawful" obstruction or concealment, or whether defense counsel's failure to voluntarily return the video here might have come within the prohibition. Evaluation of the scope of counsel's obligation requires, instead, examination of our basic rules governing discovery and procedure. *Cf. In re Estrada*, 2006-NMSC-047, ¶ 32, 140 N.M. 492, 143 P.3d 731 (per curiam) (noting that discovery rules are designed to ensure "disclos[ure] to the fullest practicable extent" and counsel's failure to comply with these rules may rise to the level of violating the Rules of Professional Conduct (internal quotation marks and citation omitted)).

{23} No one disputes that our discovery rules for criminal cases generally require only that a defendant disclose to the State the evidence he "intends to

16

introduce . . . at the trial." Rule 5-502(A)(1) NMRA. Whether a district court may compel disclosure of material not explicitly covered by the rules, however, is a different question, and one the rules illuminate further. Rule 5-502, for example, specifies a variety of material for which discovery is *not* authorized, including reports and documents created by the defense in connection with the case, as well as statements the defendant has made to his agents or attorneys. *See* Rule 5-502(C). Evidence initially produced by the State and unmodified by the defendant is absent from the list, suggesting it is not subject to the same absolute prohibition. Rule 5-101(B) NMRA adds that our criminal procedure rules are to "be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." That basic governing principle suggests a district court retains some flexibility in crafting solutions for situations not expressly contemplated by the rules. *See Piña v. Espinosa*, 2001-NMCA-055, ¶ 28, 130 N.M. 661, 29 P.3d 1062 (providing the same in the context of the Rules of Civil Procedure); *cf. State v. Le Mier*, 2017-NMSC-017, ¶ 18, 394 P.3d 959. ("[T]rial courts shoulder the significant and important responsibility of ensuring the efficient administration of justice in the matters over which they preside[.]").

{24}    Defendant makes no reference to these provisions; he instead suggests that a defendant should never be required to turn over "harmful" evidence to the State in the absence of an explicit disclosure requirement. Our Supreme Court, however,

17

has long held that the Rules of Criminal Procedure "provide for reciprocal discovery rights and are intended to provide ample opportunity for investigation of facts." *State v. Stills*, 1998-NMSC-009, ¶ 52, 125 N.M. 66, 957 P.2d 51 (internal quotation marks and citation omitted); *see also United States v. Nixon*, 418 U.S. 683, 709 (1974) ("The need to develop all relevant facts in the adversary system is both fundamental and comprehensive."). And while this opportunity for investigation will yield to various privileges and protections, Defendant here has identified no potentially applicable protections whatsoever. *See Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 18, 138 N.M. 398, 120 P.3d 820 (recognizing "'the ancient proposition of law' that 'the public has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege'" (omission omitted) (quoting *Nixon*, 418 U.S. at 709)).

**{25}** While we have no obligation to guess at what Defendant's arguments might be, we observe that Defendant's reproduction of the State's video in this case does not appear to implicate Defendant's rights or privileges. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not . . . guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). Indeed, other jurisdictions facing the same situation have concluded that a defendant is required to return video evidence initially disclosed by the government. *See Commonwealth v. Tahlil*, 94 N.E.3d 840, 842 (Mass. 2018)

(holding that the trial court erred in not ordering the defendant to return video originally disclosed by the prosecution); *Adams v. State*, 969 S.W.2d 106, 114 (Tex. Ct. App. 1998) (holding that the district court did not err in compelling the defendant to return videotape of field sobriety test after the state lost original).

{26}    These courts have determined that production of such evidence does not implicate a defendant's right to be free from self-incrimination or the attorney-client or work product privileges. *See, e.g.*, *Tahlil*, 94 N.E.3d at 842 ("Providing a copy of the DVD to the [prosecution] . . . would not be an incriminating admission[.] . . . It would merely be the act of the defendant returning to the [prosecution] a copy of something that the [prosecution] provided to him in the first place."); *Adams*, 969 S.W.2d at 114 (rejecting "[t]he notion that information which is tendered as a result of court ordered or statutorily mandated discovery, can be converted into privileged information, though it has not been altered since tendering, enhanced by fruits of an attorney's labor since tendering, or added to with communicative actions after tendering"). Instead, these courts have concluded that the video evidence initially developed and produced by the government was returnable, largely because it was the government's evidence to begin with. *See, e.g.*, *Adams*, 969 S.W.2d at 114 ("The tape is a recording of an event made by the [s]tate and disclosed to the defense as part of statutory pretrial discovery."); *see also Tahlil*, 94 N.E.3d at 842 n.3 ("[I]t is exactly this point—that the evidence was

19

once in the [prosecutor's] possession, and that the [prosecutor] gave it to the defendant—that *is* relevant and dispositive."); *accord United States v. Province*, 45 M.J. 359, 363 (C.A.A.F. 1996) ("[H]ad the [g]overnment asked the defense for a copy of th[e] document, alleging that their copy had been lost or destroyed, then defense counsel would have been obligated to turn [it] over[.]").

{27}    We find these cases persuasive, and they guide our analysis here. The video at issue was the State's evidence, produced in compliance with its discovery obligations. Because the video originated with the State and remained unaltered by the defense, it appears no constitutional, statutory, or common law prohibition on disclosure applied. In the absence of an identified prohibition or protection, the district court was entitled to resolve the dispute with an eye toward promoting "fairness in administration and the elimination of unjustifiable . . . delay" as contemplated by the rules. *See* Rule 5-101(B). In short, fairness, expediency, and the absence of an identified prohibition or protection all counseled in favor of production here, regardless whether Rule 16-304(A) required it. *Cf. State v. Wasson*, 1998-NMCA-087, ¶ 16, 125 N.M. 656, 964 P.2d 820 ("[W]e may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below."). We thus cannot say that the district court erred in compelling Defendant to return to the State a copy of the video the State had

20

initially provided, and as a result, we affirm the district court's denial of Defendant's motion for a new trial. *See, e.g.*, *State v. Stephens*, 1982-NMSC-128, ¶ 15, 99 N.M. 32, 653 P.2d 863 (concluding new trial was unwarranted where no error was identified).

**III.     No Conflict Arose as a Result of the District Court's Order Compelling Production**

**{28}**     Defendant argues that his compelled production of the video created a conflict on the ground that defense counsel's duty as an officer of the court had, at that point, triumphed over her duty as an advocate for Defendant. Defendant maintains that he was entitled to counsel having undivided loyalty and, thus, the district court's failure to allow counsel to withdraw was error.

**{29}**     Claims of conflict of interest and the related question of whether a defendant is entitled to any presumption of prejudice as a result of a conflict are reviewed de novo. *See State v. Vincent*, 2005-NMCA-064, ¶ 4, 137 N.M. 462, 112 P.3d 1119. A presumption is applicable only where the record reveals "an actual, active conflict that adversely affects counsel's trial performance[.]" *Id.* We have long recognized the Sixth Amendment guarantees a defendant the right to counsel of undivided loyalty, free from conflicts of interest. *See State v. Santillanes*, 1990-NMCA-035, ¶ 1, 109 N.M. 781, 790 P.2d 1062. While the typical conflict arises in cases involving multiple representation, a conflict may also arise in any case where "the interests of the client and the attorney diverge." *See State v. Martinez*, 2001-

21

NMCA-059, ¶ 25, 130 N.M. 744, 31 P.3d 1018. That proposition is restated slightly in our Rules of Professional Conduct, which direct that "a lawyer shall not represent a client if the representation [of that client may be] . . . materially limited by the lawyer's responsibilities to . . . a third person or by a personal interest of the lawyer." Rule 16-107(A)(2) NMRA.

{30} We have previously found various considerations to be relevant to our determination of whether a defendant can establish the requisite divergence of interest or material limitation in his counsel's representation. Where a lawyer is implicated in the same criminal enterprise as the defendant, for example, we have noted a conflict will arise because the "lawyer's need for self-preservation will trump the duties of representation owed to the client." *Martinez*, 2001-NMCA-059, ¶ 25. We also have concluded representation may be impermissibly limited and a conflict may arise where counsel would have pursued "some plausible defense" strategy but avoided it because it would have been "damaging to another's interest." *Santillanes*, 1990-NMCA-035, ¶ 7; *see also State v. Sosa*, 1997-NMSC-032, ¶ 22, 123 N.M. 564, 943 P.2d 1017 ("[The defendant's] fail[ure] to prove that [counsel] . . . was forced to abandon the defenses of diminished capacity or duress in order to protect [another] . . . [was] not sufficient to establish an actual conflict of interest.").

22

{31}    Defendant here does not rely on these principles. He instead suggests the district court's order compelling production of the video—and the ensuing possibility of contempt for failure to comply—impermissibly limited his counsel's loyalty, as his counsel was faced with the unpalatable choice between contempt and weakening her client's case. New Mexico courts, however, as well as courts elsewhere, have recognized the lawyer's duties to the client are often, and properly, circumscribed by the lawyer's duties to the court and the administration of justice. *See, e.g.*, *In re Howes*, 1997-NMSC-024, ¶ 20, 123 N.M. 311, 940 P.2d 159 ("[In] the end, each member of the bar is an officer of the court. His or her first duty is not to the client or the senior partner, but to the administration of justice." (internal quotation marks and citation omitted)); *see also State v. Kruchten*, 417 P.2d 510, 515 (Ariz. 1966) ("The duty of an attorney to a client, whether in a private or criminal proceeding, is subordinate to his responsibility for the due and proper administration of justice."); *Commonwealth v. Holliday*, 882 N.E.2d 309, 320-21 (Mass. 2008) ("[A] lawyer's duty to advance the interests of his client are properly limited by his duty to comply with court rules."). Put another way, failure to comply with obligations to the court constitutes not the "zealous advocacy" our adversarial system requires, but violates "professional obligations to the system of justice itself." *Estrada*, 2006-NMSC-047, ¶ 32. Compliance with these obligations, particularly in the absence of error by the court, generally gives rise to no conflict.

23

*See, e.g.*, *Holliday*, 882 N.E.2d at 320-21; *cf. Nix v. Whiteside*, 475 U.S. 157, 176 (1986) (highlighting the "problems" and "volumes of litigation" that might be "spawned" by any rule recognizing a conflict between duty of loyalty to the client and ethical obligations to the court).

**{32}** We already have concluded here that the district court did not abuse its discretion when it ordered Defendant to return the video provided by the State. Counsel's duty to comply with that order thus presented no conflict, and Defendant has not established any "actual, active conflict," impairing his counsel's performance at trial. *See Martinez*, 2001-NMCA-059, ¶ 24. As a result, we cannot conclude the district court erred in denying defense counsel's motion to withdraw.

**CONCLUSION**

**{33}** We affirm the district court's denials of Defendant's motion to suppress, Defendant's motion for a new trial, and defense counsel's motion to withdraw.

**{34}** **IT IS SO ORDERED.**

_____

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____

24

**JULIE J. VARGAS, Judge**

_____

**HENRY M. BOHNHOFF, Judge**