This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40514**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**JOSEPH MARTINEZ,**

Defendant-Appellee.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Renee Torres, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}**     The State appeals the metropolitan court's order dismissing the State's criminal complaint against Defendant Joseph Martinez. The metropolitan court dismissed the complaint based on the officer's lack of reasonable suspicion to expand an investigatory stop into a DWI investigation. The State argues that the metropolitan court erred in dismissing the complaint by (1) misapplying an adverse inference under *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679, and (2) determining that the officer

lacked reasonable suspicion to expand the encounter into a DWI investigation. We conclude that the officer did have reasonable suspicion to expand the encounter, and we therefore reverse.

**BACKGROUND**

**{2}**     In September 2021, a New Mexico State Police officer initiated an investigatory stop after seeing a car parked on a one-way street, facing the wrong direction, with the hood up. An individual, later identified as Defendant, was standing next to the car. The officer approached Defendant and Defendant informed him "that his [car] lost power and that he pulled to the left [side] of the road." Defendant asked the officer "to jump his [car] so he could get it started again," and stated that he would drive the car, once started, to a nearby hotel and park it there. The officer testified that during this initial encounter Defendant admitted to drinking before his car lost power, and the officer smelled the "strong odor of alcoholic beverage" emanating from Defendant's breath and "his eyes were bloodshot and watery." After speaking with Defendant, the officer called for backup so another officer could perform a DWI investigation. During the officer's initial contact with Defendant, the officer's lapel camera and microphone were not in use, and no audio recording of the encounter exists. While not admitted into evidence, a video of the initial encounter was captured by the officer's dashboard camera. Based on this encounter and ensuing DWI investigation, Defendant was charged with DWI, driving the wrong way, and stopping, standing, or parking on a highway.

**{3}**     Due to the uncollected audio, Defendant sought to suppress the officer's testimony under *Ware*, arguing that the audio was material to Defendant's defense and that the officer's failure to collect it was in bad faith. In the alternative, Defendant sought "an adverse inference instruction allowing the jury to infer that the evidence not gathered would have been favorable to . . . Defendant." At a hearing on the motion to suppress, the metropolitan court determined that the uncollected audio was material and that the officer's failure to collect the audio was "mere negligence." Ultimately, the metropolitan court denied Defendant's motion to suppress, opting rather to allow liberal cross-examination of the officer. However, the metropolitan court specifically stated that, "if Defense wants to propose an adverse inference that the court should consider something in more detail," the court would consider it.

**{4}**     In a later pretrial hearing based on a motion to suppress for lack of reasonable suspicion, Defendant requested that an adverse inference be drawn based on a "note in SOPA allowing for an adverse inference." The trial court instructed Defendant to "raise that at the appropriate time," and the State sought clarification as to when that argument would be made. The court stated that it "would allow defense to make that adverse argument at whatever point they believe is appropriate . . . [and] the State can respond to that as well and make its arguments as necessary." After the close of witness testimony for the suppression hearing, Defendant raised its argument for an adverse inference to be drawn against the officer's testimony that Defendant had bloodshot watery eyes. The State did not object, or provide argument against the grant of an adverse inference. The court granted the request and drew an adverse inference

against the officer's testimony, stating that, "when it comes to the bloodshot watery eyes, I am not giving that much weight as the court allowed the adverse inference regarding any testimony that defense might think might hurt the defense because there was no audio in the recording . . . in the video recording that was taken." Then, after hearing testimony from the officer, the court found that the officer lacked reasonable suspicion to expand "with only the odor of alcohol and [the officer] not specifying where that odor of alcohol came from" and "no observations of [D]efendant's driving." Based on the lack of reasonable suspicion, the court granted Defendant's motion to suppress the officer's testimony, and dismissed the State's case against Defendant. The State appeals.

## DISCUSSION

### I.      Adverse Inference

{5}      The grant or "denial of a motion to sanction by dismissal or suppression of evidence is reviewed for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027. "[A] trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380.

{6}      In *Ware*, our Supreme Court "adopt[ed] a two-part test for deciding whether to sanction the [s]tate when police fail to gather evidence from the crime scene." 1994-NMSC-091, ¶ 25. First, the court must determine whether the evidence that police failed to gather from the crime scene is material. *Id.* "Evidence is material only if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Id.* (alteration, internal quotation marks, and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). The materiality of evidence is a question of law that we review de novo. *Id.*

{7}      Second, if the evidence is material, then the court considers the conduct of the investigating officer to determine if the failure to collect the evidence was done out of bad faith, gross negligence, or mere negligence. *Id.* ¶ 26. If the failure to collect the evidence was done in bad faith, the "court may order the evidence suppressed." *Id.* If the failure to collect the evidence was grossly negligent, "the . . . court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the [s]tate." *Id.* If the failure to collect evidence was "merely negligent . . . sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt." *Id.*

{8}      In this case, the State argues that the metropolitan court erred in granting Defendant's request to draw an adverse inference from the officer's failure to record the entirety of his interaction with Defendant because (1) the uncollected audio was not material; (2) the officer's failure to record the audio was merely negligent; and (3) the

adverse inference should have been drawn at trial, rather than at a pretrial hearing. We address each argument below.

## A.      Materiality

**{9}**      First, the State argues that the metropolitan court erred in determining that the uncollected audio was material. In the motion to suppress and at the hearing, Defendant argued that the audio was material because it was necessary for him to ascertain whether the officer had the requisite reasonable suspicion to expand the investigatory stop into a DWI investigation; it was necessary to impeach the officer regarding his testimony about the stop; and it "could have potentially provided exculpatory evidence." We agree with Defendant that the audio is material.

**{10}**      The uncollected audio is material because it is reasonably probable that, could the audio be introduced into evidence, Defendant would be acquitted of the DWI charge. The crime of driving while under the influence requires the defendant be intoxicated at the time of operating the car. *See* NMSA 1978, § 66-8-102(C)(1) (2016) (requiring a blood alcohol concentration that "results from alcohol consumed before or while driving the [car]"). Defendant asserts that he never admitted to drinking alcohol before the car was inoperable. Had the officer collected the audio of the encounter, Defendant could have relied on the audio at trial to contest the officer's testimony about Defendant's supposed admission, and he could have mounted a defense to his charge for DWI. Because Defendant alleged that he did not admit to drinking alcohol, and the audio confirming or rebutting this admission was not collected, the audio is material to Defendant's defense. *See Ware*, 1994-NMSC-091, ¶ 25. Thus, the metropolitan court did not err by finding that the uncollected audio was material. Because the uncollected audio is material, we turn to the next prong of the *Ware* test.

## B.      Preservation of the State's Argument Related to the Nature of the Officer's Negligence

**{11}**      Second, the State argues that the metropolitan court erred in granting an adverse inference as a sanction for the officer's failure to collect audio because the court previously determined that the officer's conduct was merely negligent. However, we decline to address this issue as the State failed to preserve it.

**{12}**      A court may change "a ruling [at] any time before the entry of the final judgment." *Smith v. Love*, 1984-NMSC-061, ¶ 4, 101 N.M. 355, 683 P.2d 37. "An oral ruling by the trial judge is not a final judgment. It is merely evidence of what the court had decided to do but [it] can change such ruling at any time before the entry of a final judgment." *State v. Morris*, 1961-NMSC-120, ¶ 5, 69 N.M. 89, 364 P.2d 348. Although the metropolitan court ruled that the failure to collect the audio was merely negligent in the first hearing, it did so orally. By granting the adverse inference in a subsequent hearing, the court modified its prior determination that the officer's actions were merely negligent and newly concluded that the officer's actions were grossly negligent. Such a modification was within the metropolitan court's discretion. But more importantly, the State did not

object to the trial court changing its ruling during the pretrial hearing, nor did the State articulate an argument that an adverse inference was an inappropriate remedy because of the metropolitan court's previous ruling that the officer's conduct was mere, and not gross, negligence. Therefore, the State failed to preserve this issue. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a [party] must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)). Because the State failed to preserve this argument, we will not address it further.

## C.     Application of Sanction

**{13}**     Finally, the State argues that the metropolitan court erred in drawing the adverse inference when making a determination at a pretrial hearing as to whether the officer had reasonable suspicion to expand the investigatory stop, rather than instructing the jury that they could draw an adverse inference from the officer's failure to collect the material audio. Defendant argues that the court did not draw an adverse inference at the pretrial hearing, but instead used its discretion to incorporate its concerns about the uncollected evidence into its determination as to whether suppression was warranted. However, Defendant neither argues nor provides authority supporting the proposition that a *Ware* adverse inference can be applied at a pretrial hearing. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume . . . counsel after diligent search, was unable to find any supporting authority."). While the court does have authority to weigh the evidence before it, in this case, the court specifically noted that, "when it comes to the bloodshot watery eyes, [the court] is not giving that much weight as the court allowed the adverse inference." The court was clear that it applied the *Ware* adverse inference in its own determination not to give weight to the officer's testimony about what he observed prior to the commencement of the DWI investigation. We agree that the adverse inference should not have been applied at a pretrial hearing, but is an instruction to be given and applied at trial by which a jury can ascertain the probative value of evidence in conjunction with its determination of guilt or innocence.

**{14}**     Under *Ware*, the appropriate time to draw an adverse inference is at the time of trial. *See* 1994-NMSC-091, ¶ 26 ("If it is determined that the officers were grossly negligent in failing to gather the evidence . . . then the trial court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the [s]tate."). Here, by incorporating an adverse inference into its determination that the officer lacked reasonable suspicion to expand the stop into a DWI investigation, and thereby disregarding Defendant's actions, odor of alcohol, and statements during the encounter with police, the metropolitan court misapplied the law. By doing so, the court abused its discretion in determining whether reasonable suspicion was present to support a DWI investigation. *See State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380 ("[A] trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law."). Under *Ware*, the metropolitan court's discretion extends only to instructing a jury as to the propriety of it drawing an adverse inference at trial regarding the uncollected audio. *See Ware*, 1994-NMSC-091,

¶ 26. We therefore reverse the district court's exclusion of circumstances after the initial encounter with Defendant, including Defendant's admission to having recently consumed alcohol, from its assessment of whether the DWI investigation was supported by reasonable suspicion.

## II.    Reasonable Suspicion

**{15}**    We now turn to the State's argument that the metropolitan court's ultimate conclusion that the officer lacked reasonable suspicion to expand the initial encounter into a DWI investigation. Because we concluded it was an abuse of discretion for the metropolitan court to draw an adverse inference from the uncollected audio at the pretrial hearing in which the court determined the officer lacked reasonable suspicion to expand the investigatory stop into a DWI investigation, we will not draw the same adverse inference in our review for reasonable suspicion. When reviewing a court's determination of a motion to suppress, we consider whether its findings of fact are supported by substantial evidence, *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171, viewing the evidence in the light most favorable to the prevailing party. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We then consider the metropolitan court's legal conclusions de novo. *See Leyba*, 1997-NMCA-023, ¶ 8.

**{16}**    The State argues that the officer had reasonable suspicion to expand the encounter into a DWI investigation. Defendant argues that, after weighing evidence based on the officer's failure to collect audio of the encounter, "the evidence of reasonable suspicion consisted of [the officer's] testimony that [Defendant's] breath smelled of alcohol and that his car was facing the wrong direction on the street," and that the "limited evidence of DWI" was insufficient to establish reasonable suspicion. We disagree with Defendant.

**{17}**    Reasonable suspicion is required to expand into a DWI investigation. *Schuster v. N.M. Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 29, 283 P.3d 288. "[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (alteration, internal quotation marks, and citation omitted). A "reasonable suspicion determination requires us to assess the totality of the circumstances and precludes a divide-and-conquer analysis in which we view each individual factor or circumstance in a vacuum." *State v. Neal*, 2007-NMSC-043, ¶ 28, 142 N.M. 176, 164 P.3d 57 (alteration, omission, internal quotation marks, and citation omitted). In developing reasonable suspicion, officers "need not limit themselves to their direct observations." *State v. Salazar*, 2019-NMCA-021, ¶ 16, 458 P.3d 546. "Instead, they may rely on their own experiences and specialized training to draw inferences and make deductions from the totality of information available to them." *Id.*

**{18}**    Here, the metropolitan court determined that the officer did not have sufficient reasonable suspicion to expand the encounter into a DWI investigation "based solely on [the officer's] testimony of a strong odor of alcohol, without testimony of where the odor

derived from and no observation of defendant's driving." However, these factual findings are not supported by substantial evidence in the record.

**{19}**   Contrary to the metropolitan court's order, the officer testified that "he smelled a strong odor of alcoholic beverage emitting from [Defendant's] breath as [Defendant] spoke." Defendant concedes that the officer did provide this testimony. Therefore, the metropolitan court's finding that the officer did not testify to the origin of the smell of alcohol is not supported by substantial evidence.

**{20}**   Further, the officer testified to the following: around 1:00 a.m. he saw an individual standing next to the car parked in the wrong direction on a one-way road with the hood up; he turned his car around and approached the man that was standing next to the car. While speaking with Defendant, Defendant told the officer that "his [car] lost power and that he pulled to the left of the road"; Defendant also "wanted [the officer] to jump his [car] so he could get it started again" and if he could get the car moving, Defendant planned to drive it to a nearby hotel and park it there. The officer also testified that, during this conversation, Defendant admitted to drinking before his car lost power and the officer smelled the "strong odor of alcoholic beverage" emanating from his breath and "his eyes were bloodshot and watery." At this point in the encounter, the officer called another officer to perform a DWI investigation.

**{21}**   Although the officer did not witness Defendant driving the car, Defendant's admission to driving the car, as well as the car's location in the road with the hood up, support an inference that Defendant had recently driven the car. *See State v. Mailman*, 2010-NMSC-036, ¶ 28, 148 N.M. 702, 242 P.3d 269 (stating that the "accused's own admissions, the location of the [car] next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated," is sufficient circumstantial evidence to prove DWI). Additionally, the officer's testimony that Defendant admitted to drinking prior to the car losing power as well as the officer's observation that he smelled alcohol on Defendant's breath, that Defendant had bloodshot watery eyes, and the car's presence facing the wrong direction on a one-way road support a logical inference that Defendant had recently operated the car while intoxicated. *See Schuster v. N.M. Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶¶ 27-30, 283 P.3d 288 (holding that an officer had reasonable suspicion to expand into a DWI investigation after observing the defendant drop his motorcycle while trying to ride it because "he smelled a strong odor of alcohol coming from [the defendant's] mouth and [the defendant's] eyes were bloodshot and watery," and the defendant admitted to drinking two beers); *State v. Walters*, 1997-NMCA-013, ¶ 26, 123 N.M. 88, 934 P.2d 282 (holding that an officer had reasonable suspicion to investigate further for DWI after detecting the odor of alcohol when speaking to a motorist that had pulled off on to the side of the road). Based on the totality of the circumstances, the officer had reasonable suspicion to expand the encounter into a DWI investigation, and the metropolitan court erred in suppressing the officer's testimony based on a lack of reasonable suspicion. We therefore reverse the

metropolitan court's suppression of the officer's testimony and its dismissal of the charges against Defendant.[1]

**CONCLUSION**

**{22}** For the above reasons, we reverse and remand to the trial court for further proceedings in accordance with this opinion.

**{23}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**

---

[1] The State also argues that the court "erred in basing its dismissal on its decision to suppress for lack of reasonable suspicion to expand." Because we reverse the metropolitan court's finding of lack of reasonable suspicion, we do not address this argument.